**In re James KREIDLE, Debtor.**

**James D. KREIDLE, Plaintiff,**

v.

**DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 86–B–5540–M.**
**Adv. No. 90–1579 PAC.**

United States Bankruptcy Court,
D. Colorado.

June 23, 1992.

**1010**

Harry M. Sterling, Denver, Colo., for plaintiff.

Mark Nebergall, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

KAREN M. SEE, Visiting Judge.

Pending is a Motion for Attorney Fees and Costs pursuant to 26 U.S.C. § 7430, arising from Debtor's Complaint for Determination of Tax Liability and for Equitable, Injunctive and Declaratory Relief. After judgment was entered for Debtor and against the IRS in the action, Debtor moved for $227,152.04 in attorney fees and costs. The court finds that Debtor is a prevailing party and that the IRS' position on the most significant issue was not substantially justified, and awards $192,817.23 for fees and costs. The court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(*O*).

### I. BACKGROUND

Debtor James Kreidle was a 50% partner in Titsch & Associates, a general partnership, and an officer and director of related corporations. In 1986 Debtor was personally liable for $8,000,000 in partnership debt and guarantees of corporate debt. On June 20, 1986, an involuntary petition was filed. On September 26, at the hearing on the involuntary petition, petitioning creditors and Debtor agreed to a Chapter 11 Order for Relief. On October 2, the Order was inadvertently entered in Chapter 7, rather than Chapter 11 as agreed, so on November 25, 1986, the error was corrected by an Order Converting Case to Chapter 11.

The facts in the tax litigation underlying this fee dispute began when Debtor sent the IRS an election to terminate his 1986 calendar tax year on October 1, 1986, pursuant to IRC § 1398, which allows a Chapter 11 Debtor to terminate the tax year upon commencement of the bankruptcy.

On June 9, 1987, a Notice of Bar Date for filing proofs of claim was mailed to all creditors, including the IRS. Before the bar date, another creditor filed a proof of claim on behalf of the IRS in an unknown amount for FICA, Federal Withholding Taxes "and/or other taxes in an undetermined amount." On July 21, 1987, the IRS received notice of the filing of the proof of claim along with a notice the IRS could amend the proof of claim if desired.

The court approved Debtor's Disclosure Statement on September 14, 1987. November 13 was the last day to file objections to the Plan. The Disclosure Statement provided Debtor would pay $203,518 in estimated unpaid 1986 taxes. On October 9, the IRS received the Disclosure Statement, Plan, notice of deadline to file objections, and a ballot for voting on the Plan. The IRS did not file a ballot or object to the Plan. On November 16, 1987, an Order Confirming Debtor's First Amended Plan of Reorganization was entered.

Debtor and his spouse determined their actual tax liability for the tax year ending October 2, 1986 to be $166,275, and $2,513 for the tax year ending December 31, 1986. They paid the taxes when they submitted the returns on October 15, 1987. The first inkling of trouble was three years later, on October 5, 1990, when after an audit of Debtor's tax returns for the 1986–88 tax years, the IRS issued a Statutory Notice of Deficiency claiming additional taxes due of $1,510,964, including interest and penalties, in excess of the amounts previously paid. The IRS based the deficiency, in part, on an alleged untimely filing of the § 1398 election.

Debtor was current on Plan payments to that point but did not pay the interest payment scheduled for December, 1990 after receipt of the Notice of Deficiency.

The parties agreed in the Amended Joint Pretrial Statement that Debtor and his Plan creditors would be injured as a result of allowing the IRS to collect a $1,500,000 claim at that late stage in Debtor's rehabilitation.

On December 7, 1990, Debtor filed an adversary complaint in bankruptcy court pursuant to 11 U.S.C. § 505(b)(1). Debtor and his spouse each also filed a petition with the United States Tax Court for redetermination of the liability deficiencies claimed by the IRS within 90 days from the issuance of the Notice of Deficiency. The Tax Court petitions, filed in January, 1991, were not heard before this court's hearing of Debtor's adversary action.

## II. COMPLAINT TO DETERMINE TAX LIABILITY

Debtor filed a Complaint for Determination of Tax Liability pursuant to 11 U.S.C. § 505(b), presenting several issues for trial. The first issue was whether Debtor made a timely § 1398 election and was entitled to file short year tax returns for 1986. The timeliness issue turned on whether an involuntary bankruptcy case commences upon filing of the petition or upon entry of the Order for Relief for purposes of Section 1398.[1]

The second issue was the amount of Kreidle's and the estate's available net operating loss carrybacks and whether NOL carrybacks and carryforwards were sufficient to offset any tax liability for 1986 and 1987, specifically liability arising from cancellation of debt income as a result of the bankruptcy discharge. This involved a de-termination whether losses were capital or ordinary losses.

The IRS argued the bankruptcy estate, as a separate taxpayer under the Tax Code, used up all favorable tax attributes, so Debtor was not entitled to take carryback net operating losses to offset the alleged increase in income taxes for 1986. Debtor argued that regardless of disposition of other issues raised in the complaint, the IRS incorrectly eliminated the net operating losses based on an incorrect calculation of cancellation of indebtedness income. The IRS objected to inclusion of this issue at trial, claiming surprise. The issue of cancellation of debt was not directly raised in Debtor's Complaint, but the parties were on notice the issue was pending. It was discussed in pretrial conferences and included in the Pretrial Statement filed three weeks before trial.

The third issue was whether there was substantial authority to support Debtor's position on his submitted tax returns for 1986 and 1987, or whether Debtor was liable for penalties pursuant to I.R.C. § 6661 for substantial understatement of income.

The fourth issue was whether Debtor was entitled to a charitable contribution carryover deduction for 1987. This required determination of the amount and nature of the estate's tax attributes, and whether they were consumed by the estate's tax liability or flowed out to Debtor upon confirmation of the Plan.

The fifth issue was whether the IRS was estopped from collecting the alleged deficiency based on reliance by Debtor and his creditors on the amount of tax liability

---

**1.** Section 1398(d) permits a Chapter 11 debtor to elect to terminate the tax year and create two short tax years. The first year ends the date the bankruptcy commences; the second ends the last day of the calendar year. When an individual files bankruptcy, tax benefits such as net operating loss carryovers become property of the estate. By splitting the year, benefits available before commencement of the case can be used to reduce tax liability accrued to the taxpayer to that date. At termination of the estate, unused benefits revert to the taxpayer. § 1398(i).

The election must be made by the 15th day of the fourth month after the month in which the bankruptcy case commences. Rev.Proc. § 7.a.2(d). The IRS argued the case commenced at filing of the involuntary petition on June 20, 1986, so Debtor's election had to be filed by October 15, 1986. Debtor argued that for purposes of § 1398, the case commenced upon entry of the Order for Relief on October 2, 1986, so the election would be timely if filed by February 15, 1987. The election was filed on January 15, 1987. Disallowing the election would increase Debtor's taxable income for 1986 and 1987 because net operating losses and other tax benefits Debtor claimed on his returns would flow into the estate and not be available to offset Debtor's income.

shown in the First Amended Disclosure Statement, in confirming the Plan, and making payments under the plan for several years before issuance of the Notice of Deficiency.

### III. FINDINGS AND CONCLUSIONS IN TAX DISPUTE

The result of the prior litigation will be summarized. To the extent issues overlap with those in the fee dispute, the Findings entered July 1, 1991 are incorporated. The court concluded that for purposes of § 1398, an involuntary bankruptcy commences when the Order for Relief is entered, and that Debtor's § 1398 election was timely filed on January 15, 1987, thus creating two short tax years in 1986: from January 1 to October 1, and from October 2 to December 31, 1986. It was also concluded that even if the § 1398 election was untimely, the IRS should be estopped from assessing or collecting the alleged deficiency due to actions and statements by IRS representatives which led Debtor, his wife, and creditors to believe, to their detriment, that the § 1398 election was valid, and that the IRS had no claims against Debtor's estate.

Before trial, the IRS claimed the cancellation of indebtedness income was $5,300,-000; Debtor claimed it did not exceed $423,-957. At trial, the cancellation of indebtedness income figure used by the IRS turned out to be erroneous because the person responsible for the audit failed to take into account the effect of § 108(e)(2) which provides that cancellation of debt, which if paid would give rise to a deduction, does not result in taxable income. On the second day of trial, the parties stipulated the amount of cancellation of debt income was $1,054,757, which was significantly less than the $5,300,000 originally alleged by the IRS.

Based on the Stipulation and the conclusion that Debtor's § 1398 election was valid, the court entered the following findings of fact and conclusions of law in its calculation of Debtor's correct income tax liability for the 1986 and 1987 tax years:

1) The amount of charitable contribution carryover deduction flowing out of the bankruptcy estate for use by debtor was $41,135.

2) The characterization of the loss occurring from Debtor's partnership interest in Titsch & Associates becoming worthless by reason of its bankruptcy was an issue properly before the court despite the IRS' contention that it lacked sufficient notice. The court reached this conclusion based on discussions of this issue by the IRS with debtor and with the court prior to trial.

3) The loss resulting from the worthlessness of debtor's partnership interest was an ordinary loss and therefore the entire $2,092,090 loss was available for carryback along with other NOLs incurred by Debtor. The loss flowed out to debtor on November 16, 1987 when the bankruptcy estate terminated and increased Kreidle's available NOL carrybacks.

4) Debtor was not subject to penalties under § 6661 of the Tax Code based on its conclusion that Debtor made a proper § 1398 election which resulted in Debtor's tax return being correct as filed. In addition, debtor adequately disclosed the relevant facts that identified potential controversy over the § 1398 election on his 1986 tax return form.

5) Debtor was not liable for additional taxes, penalties and interest in the amount of $1,510,964 as alleged in the Notice of Deficiency. Instead, the court found debtor was, in fact, entitled to a refund of $285,084, plus interest for the 1986 tax year, and a refund for the 1987 tax year of $2,456 plus interest.

### IV. ATTORNEY FEE DISPUTE UNDER 26 U.S.C. § 7430

The court now addresses the merits of Debtor's motion under 26 U.S.C. § 7430 (1988) for attorney fees, expert witness fees and costs totaling $227,152.04, incurred in successfully litigating his tax liability against the IRS. Debtor must establish that: 1) he meets the requirements of 28 U.S.C. § 2412(d)(2)(B) that "a party" must be an individual with a net worth less

than $2,000,000 when the civil action was filed; 2) he exhausted available administrative remedies before litigating the dispute; 3) the fees and costs were incurred in a civil proceeding brought in a court of the United States; 4) he was the "prevailing party" in the litigation; 5) the position of the United States in the proceeding was not substantially justified; 6) he did not unreasonably protract or delay the litigation; 7) the total fee requested is reasonable; and 8) if fees are awarded in excess of the $75 statutory rate, "special factors" justify the higher award.

### A. The Stipulations

At a hearing on October 29, 1991, the parties entered into the following stipulations regarding Debtor's motion for attorney fees and costs, and read them into the record:

1) Debtor/Plaintiff was never issued a 30–day letter allowing Plaintiff to file a protest and have an appeals conference with the IRS Appellate Administration Division.

2) Debtor/Plaintiff did not protract the proceedings in the adversary case between Plaintiff and Defendant.

3) The number of hours of services provided to Plaintiff as set forth in Plaintiff's Motion for Attorney Fees and Costs spent by attorneys, accountants, expert witnesses and other support staff were reasonable.

4) The hourly rates set forth in Plaintiff's Motion for Attorney Fees and Costs were comparable to those charged by other attorneys for the Denver geographical region.

5) The services performed by accountants and experts were reasonably necessary for preparation of Plaintiff's case at trial.

6) Certified public accountants are authorized to practice before the Internal Revenue Service.

7) Plaintiff substantially prevailed with respect to the amount in controversy in the adversary proceeding. Plaintiff also substantially prevailed with respect to

the most significant issue or set of issues.

8) Plaintiff meets the requirements of the first section of 28 U.S.C. § 2412(d)(1)(B) (as in effect on October 22, 1986) and meets the requirements of 28 U.S.C. § 2412(d)(2)(B).

9) The increase in the cost of living justifies a minimum rate of $92.25 per hour for attorney fees under § 7430.

■ The hearing was continued one day, to October 30, 1991, to address the limited issue of whether the IRS position was substantially justified. During that hearing IRS counsel announced he was withdrawing from the stipulation. Despite the previous stipulation, counsel argued that Debtor needlessly protracted the proceedings by failing to present the issues related to the IRS' erroneous calculation of cancellation of debt income until raising the issues for the first time in the Pretrial Statement submitted three weeks before trial. The IRS argued that Debtor's counsel was a "litigation-crazed fiend" who had failed to raise the issue in the Complaint as an ambush and a ploy. The court notes counsel appeared to have strong feelings about the case and each other, but Debtor's counsel did not appear to be a "litigation-crazed fiend." The court ruled the stipulation remained in force and was binding on the IRS despite counsel's statement, made without cause, that the IRS was withdrawing the stipulation. IRS counsel has refused to sign the written version of the stipulation.

The stipulation read into the record is enforceable, despite the attempt by IRS counsel to withdraw it. "Stipulations made on the record in open court are as binding on the parties as if reduced to writing and formally executed." *In re Herrera*, 23 B.R. 796, 797 (9th Cir. B.A.P.1982). "Stipulations of attorneys may not be disregarded or set aside at will." *United States v. Northern Colorado Water Conservancy Dist.*, 608 F.2d 422, 431 (10th Cir.1979). The parties engaged in arms-length negotiations on the stipulations which were read into the record at the hearing. The IRS makes no claim of overreaching, surprise,

or injustice to support setting aside the stipulation.

The remaining issues are whether: the bankruptcy court is a court of the United States; Debtor exhausted administrative remedies before litigation; the position of the United States was substantially justified; and special factors include specialization in tax or bankruptcy.

### B. Debtor As Prevailing Party; IRS Position Not Substantially Justified

To recover attorney fees, Debtor must establish that he satisfies the requirements for a "prevailing party," defined in 26 U.S.C. § 7430(c)(4)(A) as any party:

(i) which establishes that the position of the United States in the proceeding was not substantially justified,

(ii) which—

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

(iii) which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28. . . .

The parties stipulated that Debtor does not exceed net worth requirements in 28 U.S.C. § 2412(d)(2)(B) and 26 U.S.C. § 7430(c)(4)(A)(iii).

The position of the IRS includes all legal and factual positions asserted, beginning on October 5, 1990, the date the IRS issued the Notice of Deficiency. Section 7430(c)(7) (1988) expressly allows consideration of the reasonableness of all positions taken by the IRS from the date a taxpayer receives a Notice of Deficiency. "The position of the United States is the legal and factual position asserted by it during the administrative and court proceedings, regardless of whether the position originated before or after the proceedings began." *Kenagy v. United States*, 942 F.2d 459, 464 (8th Cir. 1991).[2]

---

**2.** Congress amended § 7430 in 1986 and 1988 to resolve a split among circuits on the meaning of "position of the United States." *Compare, United States v. Balanced Fin. Management, Inc.*, 769

■ The IRS was not substantially justified in issuing the Notice of Deficiency. The Supreme Court, interpreting an identical definition of "prevailing party" in the Equal Access to Justice Act (EAJA), defined "substantially justified" to require the position of the United Stated to have a reasonable basis in both law and fact. *Pierce v. Underwood*, 487 U.S. 552, 565–66 & n. 2, 108 S.Ct. 2541, 2550 & n. 2, 101 L.Ed.2d 490 (1988); *Hadden v. Bowen*, 851 F.2d 1266, 1267 (10th Cir.1988). The following factors bear on reasonableness of the government's position: whether the government used expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances; whether the government pursued the litigation for purposes of harassment or embarrassment or out of political motivations; and such other factors as the court finds relevant. *Humphreys v. United States*, 723 F.Supp. 1421, 1424 (D.Kan.1989).

■ It is less likely the government's position is unreasonable if asserted in a case of first impression. *Smith v. United States*, 735 F.Supp. 1396, 1401 (C.D.Ill. 1990). A position is not unreasonable simply because the government loses the case. *George v. United States*, 666 F.Supp. 962, 965 (E.D.Mich.1987). Views of other courts on the merits of the position bear on reasonableness. *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2552, 101 L.Ed.2d 490 (1988). Willingness to settle on unfavorable terms is not conclusive proof a position was unjustified, but may be considered as evidence of unreasonableness. *Id.* The position is unreasonable if the government "failed to adequately investigate its case." *Kenagy*, 942 F.2d 459, 464.

■ Consistent with rulings announced at the October 30, 1991 hearing, following are findings and conclusions on the issue of substantial justification, based on the Stipulations on record and evidence presented

---

F.2d 1440, 1450 (10th Cir.1985) (arguments in litigation); *Kaufman v. Egger*, 758 F.2d 1 (1st Cir.1985) (includes prelitigation conduct).

in the hearing.[3] The IRS alleged in its Notice of Deficiency that Debtor owed $1,510,964. The basis for the Notice of Deficiency which triggered this litigation was twofold. The IRS argued that Debtor failed to make a timely election under § 1398(d)(2), resulting in disallowance of Debtor's claimed net operating loss carryovers, and that other favorable tax attributes were used up by the bankruptcy estate. The IRS further alleged that Debtor's claimed net operating loss carryovers and charitable contribution carryovers were used up pursuant to IRC § 108(b) based on its calculations of $5,331,669 of additional income arising from cancellation of indebtedness upon confirmation of the Plan.

Debtor estimated his discharge of debt income at $400,000. In deposition testimony at trial, a Revenue Agent assigned to the audit admitted that she failed to consider the application of 26 U.S.C. § 108(e)(2). Application of § 108(e)(2) substantially lowers the amount of income arising from cancellation of indebtedness because it provides that no income shall be realized from the discharge of indebtedness to the extent that payment of the liability would have given rise to a deduction.

The IRS cannot claim surprise on the § 108(e) issue although it was not specifically raised in the Complaint, because the issue was material in its decision to issue the Notice of Deficiency. IRS counsel conceded on the record this case would likely have been settled had the IRS been aware of the error at an earlier stage. IRS' failure to confirm the accuracy of its audit before trial supports a finding of unreasonableness. Overall circumstances, including the IRS' unfavorable settlement during trial on the amount of cancellation of debt income, also demonstrate the unreasonableness of the IRS position on this issue. The IRS was not substantially justified in its position on the amount of cancellation of debt income.

---

**3.** The decision on substantial justification, announced on the record, was not earlier reduced to writing because the parties subsequently advised that settlement was imminent, and re-

### C. *Most Significant Issue and Amount in Controversy*

Debtor prevailed on the most significant issue and the amount in controversy. Particularly relevant is the stipulation that "Plaintiff substantially prevailed with respect to the amount in controversy in the adversary proceeding. Plaintiff also substantially prevailed with respect to the most significant issue or set of issues presented." IRS counsel now refuses to abide by the stipulation and contends the issues of timeliness of the § 1398 election and the characterization of Debtor's partnership loss are the most significant issues. This belated argument is contrary to the Stipulation entered on the record. A stipulation by counsel in open court is a judicial admission and counsel is precluded from taking a contrary position on the issue. *In re Sanglier*, 124 B.R. 511, 513 n. 3 (Bankr. E.D.Mich.1991). Even if this argument were reopened on the question of what was the most significant issue, the IRS' argument would fail. Both parties agree that but for the error in applying § 108, the case would likely have settled.

This case involved multiple issues. Two decided in Debtor's favor, the § 1398(d)(2) issue and estoppel, were issues of first impression. These issues affected Debtor's tax liability, but were not the most significant issues. In a case involving multiple issues, the government's justification on a minor issue should not defeat an award of attorney fees to a taxpayer who prevails on the most significant issue. *In re Testimony of Arthur Andersen & Co.*, 832 F.2d 1057, 1060 (8th Cir.1987). Section 7430(c)(4)(A)(ii)(II) does not require the taxpayer to prevail on every issue so long as he prevails with respect to the most significant issue or set of issues. The court finds the miscalculation of Debtor's cancellation of indebtedness income was the most significant factual issue in the action because it triggered the litigation.

quested a continuance until January, 1992 to obtain formal approval of the Justice Department. However, the Justice Department did not approve the settlement, so this opinion ensued.

Debtor did not needlessly protract proceedings. The IRS was not substantially justified in its failure to consider § 108(e) of the Tax Code during the course of its audit of Debtor's returns. The mistake led to disallowance of Debtor's net operating loss carryforwards and the assessment of deficiencies for 1986 and 1987. Based on findings and conclusions in the adversary action, the parties stipulated that Debtor was entitled to a refund for both 1986 and 1987. Debtor substantially prevailed on both the amount in controversy and the most significant issue in the litigation.

### D. Court of the United States

A court proceeding is defined as "any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court)." § 7430(c)(6). The IRS contends Debtor's motion is not a "court proceeding" because a bankruptcy court is not a "court of the United States," defined by 28 U.S.C. § 451 as the Supreme Court, Court of Appeals, District Court, Court of International Trade and any court created by Act of Congress in which judges "are entitled to hold office during good behavior."

■■■■■■ The Bankruptcy Court is a "court of the United States" for purposes of awarding attorney fees under § 7430. Several courts have considered motions pursuant to § 7430 without comment on bankruptcy jurisdiction, including District and Bankruptcy Courts in Colorado. *In re Graham,* 106 B.R. 692 (Bankr.D.C.Colo. 1989); *In re Hill,* 71 B.R. 517 (Bankr.Colo. 1987); *In re Olson,* 100 B.R. 458 (Bankr. N.D.Iowa 1989), *aff'd,* 121 B.R. 346 (N.D.Iowa 1990), *aff'd,* 930 F.2d 6 (8th Cir. 1991); *In re Kiker,* 98 B.R. 103 (Bankr. N.D.Ga.1988); *In re Robidoux,* 116 B.R. 320 (D.Mass.1990); *contra In re Brickell Investments Corp.,* 922 F.2d 696, 701 (11th Cir.1991) (based on statutory language of § 7430 and similar EAJA provision). The Tenth Circuit has not yet considered the jurisdictional scope of § 7430. *But see O'Connor v. U.S. Dept. of Energy,* 942 F.2d 771 (10th Cir.1991) (fee award under EAJA). The court concludes that *In re*

*Graham,* 106 B.R. 692, and *In re Hill,* 71 B.R. 517 remain the law in this district as to jurisdiction under § 7430.

Also persuasive is *In re Chambers,* which held bankruptcy courts are "courts of the United States" for purposes of awarding fees under § 7430, reasoning that the bankruptcy court is a "unit of the district court" pursuant to 28 U.S.C. § 151, and derives its jurisdiction from the district court which is a "court of the United States," pursuant to 28 U.S.C. § 157(a). 131 B.R. 818, 824–25 (1991), *aff'd,* 140 B.R. 233 (N.D.Ill.1992).

Under 11 U.S.C. § 505(a)(1), the court may "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax. . . ." *Chambers* reconciles the conflict between § 505 and 26 U.S.C. § 7430 and furthers the legislative purpose of § 505 "to afford a forum for ready determination of the legality or amount of the tax claims, which if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate." *In re Diez,* 45 B.R. 137, 139 (Bankr.S.D.Fla.1984). It is incongruous that Congress would grant bankruptcy courts authority to enter final orders in determining debtors' tax liability but deny the ability to award attorney fees incurred in prosecuting the underlying tax disputes.

However, should this court lack jurisdiction to award fees under § 7430, it may submit proposed findings and conclusions to the District Court. *In re Davis,* 899 F.2d 1136, 1141–42 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *Brickell,* 922 F.2d 696, 701–702. Alternatively, the court deems that this opinion constitutes proposed findings of fact and conclusions of law in the event jurisdiction does not exist under § 7430.

### E. Exhaustion of Administrative Remedies

■■■■ Attorney fees cannot be awarded unless the prevailing party has exhausted administrative remedies available within the IRS. 26 U.S.C. § 7430(b)(1). As a general rule, exhaustion of remedies does not

occur until the taxpayer has participated in an Appeals Office Conference, as required by Treas.Reg. § 301.7430–1 (amended 1984). An exception to that rule is provided in Treas.Reg. § 301.7430–1(f). Administrative remedies are considered exhausted, in the case of a petition to the Tax Court, if "[t]he party did not receive a preliminary notice of proposed deficiency (30–day letter) prior to the issuance of the statutory notice of deficiency ... and the party does not refuse to participate in an Appeals office conference while the case is in docketed status." [4]

■ The question is whether Debtor's failure to obtain an Appeals Conference before trial was due to the actions or omissions of Debtor or of the IRS. The court concludes that Debtor exhausted administrative remedies because an Appeals Office Conference was not made available to him before trial of the adversary complaint.

Debtor argues the IRS did not make the appeals process available because the IRS never sent a 30–day letter. The IRS contends an Appeals office conference remains available for a four month period after a petition is filed in Tax Court, even if the taxpayer does not receive a 30–day letter, but that litigation filed outside of Tax Court is transferred to the Justice Department according to established procedure. The IRS maintains that the Appeals Office lost jurisdiction to settle the dispute when Debtor filed his adversary proceeding in bankruptcy court.

A brief discussion of IRS appeals procedures is necessary. Unquestionably, Debtor could have delayed filing of the adversary complaint and participated in the alternative appeals process triggered by the filing of a Tax Court petition. The Appeals Office retains settlement authority over petitions filed in Tax Court for four months. Treas.Reg. § 601.106(a)(1)(i). Debtor's adversary complaint was filed before his Tax Court petition and was referred directly to the Department of Justice. Debtor filed his adversary complaint in December, 1990, and his Tax Court petition in January, 1991. The Justice Department has jurisdiction over all tax litigation occurring outside of Tax Court. 26 U.S.C. § 7122.

The Attorney General or his delegate may compromise any civil or criminal case after reference to the Department of Justice. 26 U.S.C. § 7122. Testimony by an IRS assistant district counsel established that at the Justice Department's request, the Appeals Office sometimes exercises concurrent jurisdiction and assists in settlements. *Deposition, John Weeda*, p. 16. The testimony refers to Treas.Reg. § 601.106(d)(3)(f) which provides:

> For issues in docketed and non-docketed cases pending with Appeals which are related to issues in docketed cases over which Counsel has jurisdiction, no settlement offer will be accepted by either Appeals or Counsel unless both agree that the offer is acceptable. The protest procedure will be available to Appeals and regional counsel will have the authority to resolve the issue with respect to both the Appeals and Counsel cases. If settlement of the docketed case requires approval by regional counsel or Chief Counsel. the final decision with respect to the issues under the jurisdiction of both Appeals and Counsel will be made by regional counsel or Chief Counsel.

In addition, Rev.Proc. 87–24 § 2.05 provides:

> By agreement between Counsel and Appeals, any docketed case may be transferred from Counsel to Appeals or from Appeals to Counsel, as appropriate, notwithstanding the fact that the case was previously considered by the receiving function. This authority will be utilized when such transfer will promote more efficient disposition of the case.

"In appropriate cases, such as those involving significant issues or large deficien-

---

**4.** The 30–day letter states the IRS' tax determination, the basis for the adjustment, and available appeal rights. If the taxpayer does not respond within 30 days, the IRS issues a notice of deficiency. Treas.Reg. § 601.105. The parties agreed Debtor was never issued a 30–day letter. He filed an adversary complaint in December 1990, and then a Tax Court petition in January 1991.

cies, Counsel and Appeals may, as soon as the case is at issue, commence working together. During such a period of joint consultation Appeals will retain jurisdiction over settlement while Counsel acts in an advisory capacity, including attending settlement conferences." Rev.Proc. 87–24 § 2.06. Furthermore, § 2.07 provides that at the request of Counsel and with the agreement of Appeals, when Counsel has jurisdiction over a case Appeals may assist Counsel with settlement negotiations, trial preparation, or the trial of a case.

Courts have allowed recovery of fees under § 7430(a) despite a party's failure to obtain an Appeals Conference before filing suit if procedures followed by the IRS precluded administrative remedies. *Brickell Invest. Corp.*, 922 F.2d 696; *Boatmen's First Nat'l Bank v. United States*, 723 F.Supp. 163 (W.D.Mo.1989); *Minahan v. Commissioner*, 88 T.C. 492 (1987); *Phillips v. Commissioner*, 88 T.C. 529 (1987), *award rev'd on other grounds*, 851 F.2d 1492 (D.C.Cir.1988). Under circumstances which indicate the IRS' refusal to compromise, standards of exhaustion of remedies are less strictly applied. *Phillips*, 88 T.C. 529. The purpose of requiring an Appeals Office Conference is to foster settlements. *Lawler v. United States*, 16 Cl.Ct. 53, 56 (1988). The statute is strictly construed in the government's favor because it effects a waiver of sovereign immunity. *Kenlin Indus. Inc. v. United States*, 927 F.2d 782, 786 (4th Cir.1991).

Treasury Regulations and Revenue Procedures demonstrate that in some cases the Appeals Office has concurrent authority to negotiate settlements, even though Counsel from the Justice Department has ultimate authority to approve any settlement over cases not docketed in Tax Court. Debtor's case was concurrently within the jurisdiction of the Appeals Office and the Justice Department because the same issues were pending in both the bankruptcy action and the docketed Tax Court case. The Justice Department retained discretion whether to make the Appeals Office Conference available after the Tax Court petition was filed.

The court does not speculate as to why the Justice Department declined to provide an Appeals Conference. The decision not to refer the case to the Appeals Office was contrary to the statutory policy of fostering settlements. Debtor did not refuse to participate in an Appeals Office Conference, but was denied an opportunity to do so despite request. Under such circumstances, an Appeals Office Conference is not a prerequisite to exhaustion of administrative remedies. The Justice Department cannot claim failure to exhaust remedies if the decision not to grant the required administrative remedy is solely within its discretion.

Debtor's fees and costs were incurred in a civil proceeding in a court of the United States. Debtor exhausted administrative remedies before initiating litigation, substantially prevailed with respect to the amount in controversy and the most significant set of issues, and did not protract proceedings. The position of the IRS was not substantially justified. Debtor meets the requirements for an award of attorney fees under 26 U.S.C. § 7430(a).

## V. FEE AWARD

### A. Reasonable Litigation Costs

The purpose of allowing attorney fees is to enable taxpayers to vindicate rights regardless of economic circumstances and to prevent overreaching by the IRS in tax disputes. *Powell v. Commissioner*, 791 F.2d 385, 392 (5th Cir.1986). The court must now inquire whether the total fee requested is reasonable, and whether special factors justify an award above the $75 statutory rate. Debtor may recover "reasonable litigation costs incurred in connection with such court proceeding." § 7430(a)(2). Pursuant to § 7430(b)(2), reasonable litigation costs include

(A) reasonable court costs, and

(B) based on prevailing market rates for the kind or quality of services furnished—

(i) the reasonable expenses of expert witnesses in connection with a court proceeding, except that no expert witness shall be compensated at a rate in

excess of the highest rate of compensation for expert witnesses paid by the United States,

(ii) the reasonable costs of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and

(iii) reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding justifies a higher rate.

### B. Stipulations

██ Counsel, Gelt, Fleishman, & Sterling (Gelt), submitted a bill for fees and costs of $192,316.71. Co-counsel Lentz, Evans & King (Lentz) submitted a bill for fees and costs totaling $34,835.33. Debtor requests $227,152.04. Debtor is a prevailing party and $192,817.23 for attorney fees and costs is awarded.[5]

The parties stipulated that the number of hours was reasonable; the hourly rates are comparable to rates charged by other attorneys in the Denver area; the services of accountants and experts were reasonably necessary for preparation of the case; certified public accountants are authorized to practice before the IRS; and the statutory maximum should be adjusted to $92.25 per hour based on a 24% increase in the cost of living.

### C. Special Factors

Initially, the court must determine whether the litigation required uncommon levels of expertise in both tax and bankruptcy law not available at the $92.25 statutory rate to support a finding of "special factors." Many attorneys working on the case have expertise in either tax or bankruptcy law and billed at rates considerably more than the adjusted statutory rate. The court concludes there is a limited availability of qualified attorneys with the tax expertise necessary to litigate Debtor's case.

The Supreme Court has construed the phrase "special factors" in the context of fee awards under EAJA. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988). Novelty of issues, ability of counsel, customary fees in other cases, and results obtained did not constitute special factors to justify an award above the statutory cap. The Court construed "limited availability of qualified attorneys" to refer to "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question ... such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed." *Id.* 108 S.Ct. at 2554. Prevailing market rates for attorneys with special skills are insufficient to support a finding of limited availability unless accompanied by evidence that the specialized skills were necessary to prosecute the litigation. *Id.* at 2553. It is unclear whether the Court intended this same construction to apply to § 7430, because unlike EAJA matters, most tax proceedings require an attorney with specialized knowledge of tax law.

In the wake of *Pierce,* courts are divided on whether tax expertise constitutes a special factor or fits within the Supreme Court's construction of "limited availability" under § 7430. *See, Bode v. United States,* 919 F.2d 1044, 1051 (5th Cir.1990) (upheld $150/hour); *United States v. Sam Ellis Stores, Inc.,* 768 F.Supp. 286 (E.D.Calif.1991) ($180/hour); *Payne v. United States,* 82–1 USTC ¶ 9416 (D.Colo. 1982). *Contra, Cassuto v. Commissioner,* 936 F.2d 736 (2d Cir.1991); *Kim v. United States,* 709 F.Supp. 932 (N.D.Calif.1989);

---

**5.** Through August 7, 1991, Debtor's fees and costs were $186,603.87. Since then, $41,000 was incurred in litigating this attorney fee motion, which Debtor may recover under § 7430. *Pow-*

*ell v. Commissioner,* 891 F.2d 1167 (5th Cir. 1990). *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (similar provision in EAJA).

*In re Robidoux,* 116 B.R. 320 (D.Mass. 1990).

 Special factors exist if counsel fulfills a dual role or has expertise in multiple areas. *United States v. Sam Ellis Stores, Inc., supra* (CPA/tax specialist); *Lewis v. United States,* 65 A.F.T.R.2d 90–475, 1990 WL 56183 (S.D.Fla.1990). Neither general expertise in trial work or bankruptcy are special factors. *Bode v. United States,* 919 F.2d 1044, 1051. *In re Chambers,* 131 B.R. 818, 827 (Bankr. N.D.Ill.1991), *aff'd,* 140 B.R. 233 (N.D.Ill. 1992). The combination of accounting and tax expertise is a special factor justifying fees above the statutory rate because of limited availability of tax attorneys capable of handling Debtor's litigation. Debtor's counsel possess distinctive skills in tax litigation and accounting; both specialties were necessary. Debtor presented undisputed evidence that the number of firms in the Denver area with the accounting expertise required to litigate his tax dispute was limited because of the bankruptcy issues, and that he could not obtain competent counsel at the statutory rate.

The bankruptcy counsel performed with skill, but Debtor did not demonstrate that bankruptcy issues required the services of counsel charging three times the statutory rate. Bankruptcy expertise is not a special factor in this case, despite the novelty and difficulty of the bankruptcy issues, and prevailing market rates for bankruptcy attorneys in the Denver area. Thus, fees of attorneys Sterling, Hahn, Temple and attorney TMH are reduced to the statutory rate of $92.25/hour because they did not demonstrate special credentials in tax litigation.

### D. Accountant and Expert Witness Fees

 Debtor is entitled to recover expenses including accountant and expert witness fees. Certified public accountants are not subject to the statutory maximum in § 7430(c)(1)(B)(iii) unless serving as an advocate in the proceeding. *United States v. Sam Ellis Stores, Inc.,* 768 F.Supp. 286 (S.D.Calif.1991). The parties stipulated that professionals other than attorneys are authorized to practice before the IRS, including CPAs. 31 C.F.R. § 10.3 (1979). "Fees for the services of an individual (whether or not an attorney) who is authorized to practice before the Tax Court or [the IRS] ... shall be treated as fees for the services of an attorney." § 7430(c)(3). Reimbursement of accountants is also governed by § 7430(c)(1)(B)(i) and (ii), which provides for fees "based upon the prevailing market rates for the kind or quality of services furnished by expert witnesses," and for "reasonable costs of any study, analysis, report, test, or project found by the court to be necessary for preparation of a party's case."

Debtor's CPAs are authorized to practice before the Tax Court. The limitation on accountant fees is inapplicable when accountants function solely as litigation support, and fees may be recovered as reasonable costs. *Sam Ellis Stores,* 768 F.Supp. 286, 290. Debtor's accountants served as litigation support, not advocates, and provided research and preparation of projections of tax liability which are properly categorized as litigation costs.

 Pursuant to the stipulations set forth above the court finds the costs incurred for accounting support were reasonable, except for 2.7 hours for services before preparation of the complaint. $222 for 1.2 hours by McClain at $185/hour is disallowed, along with $180 for 1.5 hours by Lindeburg at $120. Debtor requested reimbursement of $22,695 for "Accounting Litigation Support." After a $402 reduction, accountant fees of $22,293 are awarded.

### E. Adjusted Fee Award

Debtor requests fees and costs totaling $227,152.04. Gelt billed Debtor $192,316.71 for attorney fees and costs. Co-counsel Lentz submitted a bill for attorney fees and costs of $34,835.33. Debtor requested total costs of $42,360.65. As set forth above, the court awards $41,958.65 for total costs.

 All hours preceding preparation of the complaint are non-compensable un-

der § 7430 and are disallowed. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir.1990). The court awards compensation at the statutory rate of $92.25 to attorneys with no expertise in tax law. The following adjustments are made to the Gelt fees. HMS billed 147.20 hours at rates of $240 to $290.45 per hour for a total of $40,905.80. The court finds 143.6 hours are compensable and at the statutory rate of $92.25/hour for a total of $13,247.10. JHH billed 63.20 hours at $135.60 for a total of $8,569.92. The court finds 54.5 hours are compensable and awards an adjusted fee of $5,027.63. DAT spent 11.80 hours at rates of $110 to $154.70 for a total of $1,486.32. DAT's adjusted fee award is $1,088.55. The attorney identified as TMH spent 34.70 hours at rates of $150 to $155 for a total of $5,266. TMH's bill is reduced to $3,201.10. Also subtracted is 0.3 hours at $209.65 per hour by SPG for a total of $62.90. The court awards $116,774.83 for Gelt attorney fees and $41,413.32 for costs for a total of $158,-188.15.

Debtor also requests Lentz' attorney fees and costs totaling $34,835.33. The court disallows 5.25 hours by attorney Wherry at $200 and 1.25 hours by Diss at $125 which preceded preparation of the complaint. The court subtracts $1,206.25 for noncompensable time and awards total fees and costs of $33,629.08 for Lentz.

## VI. CONCLUSION

Pursuant to 26 U.S.C. § 7430, Debtor's motion for attorney fees and costs is granted in part and denied in part, and Debtor James D. Kreidle is awarded $192,817.23 for fees and costs incurred in his adversary action against the Internal Revenue Service. If it is determined that the bankruptcy court cannot enter a final order herein because it is not a "court of the United States," then this opinion shall be deemed proposed findings of fact and conclusions of law, for submission to the District Court.