JOHN J. DeVENNEY, JR., AND SHIRLEY D. DeVENNEY, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 33417–83.     Filed December 12, 1985.

*Jo Karen Parr* and *Richard L. Pyper*, for the petitioners. *Frank Simmons*, for the respondent.

OPINION

WHITAKER, *Judge*: This case is before the Court on petitioners' motion for recovery of litigation costs filed on May 28, 1985, pursuant to Rule 231[1] and section 7430. The issues for decision are:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as

(1) Whether petitioners qualify as a "prevailing party" and, if so,

(2) Whether petitioners have exhausted the administrative remedies available to them within the Internal Revenue Service.

Respondent determined deficiencies in petitioners' Federal income tax together with additions to tax under section 6653(b) for the years and in the amounts indicated:

| Year | Deficiency | Addition to tax sec. 6653(b) |
|------|-----------|------------------------------|
| 1977 | $5,809 | $2,905 |
| 1978 | 32,166 | 16,083 |
| 1979 | 24,244 | 12,122 |

This case was tried in November 1984 in Birmingham, Alabama. Following trial, findings of fact and opinion were stated orally pursuant to Rule 152. In that opinion, we found no deficiencies and, consequently, no additions to tax for any of the years. A decision to this effect was entered on April 30, 1985.

As a result of petitioners' motion, this Court vacated its decision of April 30, 1985, under Rule 162,[2] and ordered that respondent file a response to petitioners' motion for recovery of litigation costs. Subsequently, petitioners' and respondent's counsel were ordered to present to the Court a joint statement as to the facts with respect to the exhaustion of administrative remedies.

Pursuant to section 7430, the "prevailing party" in any civil proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under the Internal Revenue Code may be awarded a judgment for reasonable litigation costs incurred in such proceeding. To be eligible for an award of litigation costs, petitioners must meet two requirements: (1) They must satisfy

---

amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Sec. 7430(e) provides that an order granting or denying an award for reasonable litigation costs shall be incorporated as part of the decision and shall be subject to appeal in the same manner as the decision.

the statutory definition of a "prevailing party"[3] and (2) they must exhaust all administrative remedies available to them.[4] Respondent has conceded that, in the event we determine petitioners to be entitled to litigation costs, the amount of costs claimed by petitioners is reasonable.[5]

To satisfy the statutory definition of a "prevailing party," petitioners must (1) substantially prevail with respect to the amount in controversy or with respect to the most significant issue or set of issues presented, and (2) establish that the position of the United States in the civil proceeding was unreasonable.[6] Respondent has conceded that petitioners substantially prevailed with respect to the amount in controversy.

---

[3]Sec. 7430(c)(2).

(2) PREVAILING PARTY.—
   (A) IN GENERAL.—The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which—
      (i) establishes that the position of the United States in the civil proceeding was unreasonable, and
      (ii)(I) has substantially prevailed with respect to the amount in controversy, or
      (II) has substantially prevailed with respect to the most significant issue or set of issues presented.

[4]Sec. 7430(b)(2).

(2) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED.—A judgment for reasonable litigation costs shall not be awarded under subsection (a) unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service.

[5]Reasonable litigation costs are defined in sec. 7430(c)(1) as follows:

(1) REASONABLE LITIGATION COSTS.—
   (A) IN GENERAL.—The term "reasonable litigation costs" includes—
      (i) reasonable court costs,
      (ii) the reasonable expenses of expert witnesses in connection with the civil proceeding,
      (iii) the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and
      (iv) reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding.

In petitioners' motion for recovery of litigation costs, the expenses incurred were set forth as follows:

| | |
|---|---:|
| Attorneys' fees | $33,966.00 |
| Accountant's fees for consultation and court appearance | 2,145.00 |
| Tax Court filing fee | 60.00 |
| Travel | 275.00 |
| Photocopies | 136.68 |
| Long distance telephone charges | 61.77 |
| Photographs | 63.90 |
| | 36,708.35 |

Sec. 7430(b)(1) places a limitation of $25,000 on the amount of litigation costs which may be awarded with respect to any prevailing party in any civil proceeding. Petitioners are seeking a judgment for the full $25,000.

[6]Sec. 7430(c)(2), *supra* at note 3.

Thus, petitioners' status as a prevailing party is contingent upon establishing that respondent's position was unreasonable.[7]

The term "unreasonable" is not defined in section 7430, but the legislative history of the Tax Equity and Fiscal Responsibility Act of 1982 suggests the following guidelines:

The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record. [H. Rept. 97–404, at 12 (1981).] [8]

In *Baker v. Commissioner*, 83 T.C. 822, 828 (1984), this Court considered the question of reasonableness for purposes of section 7430, and concluded that "the determination of reasonableness should be made based upon all the facts and circumstances surrounding the proceeding and the fact that the Government eventually loses the case should not be determinative." Thus, our determination as to whether respondent acted reasonably in this case turns upon the legal basis for respondent's position in light of the facts available to him at the time of trial. Respondent determined petitioners' proposed deficiency using the source and application of funds method (case expenditures method). Use of this method has been authorized by the Supreme Court (*United States v. Johnson*, 319 U.S. 503 (1943)), and petitioners have not contested the propriety of its use in this instance.

The cash expenditures method is based upon the assumption that the amount by which a taxpayer's cash expenditures during a taxable period exceed his known sources of income for that period is taxable income, unless the taxpayer can show his expenditures were made from some nontaxable source of funds. A proposed deficiency determined by use of the cash expenditures method is presumptively correct, and the burden of proof is upon the taxpayer to demonstrate

---

[7]Any determination as to whether a party is a prevailing party shall be made by agreement of the parties or by the Court. Sec. 7430(c)(2)(B).

[8]Though not relevant on our facts, the committee indicated that the following factors were to be considered:

(1) Whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case,

(2) Whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation * * *

[H. Rept. 97–404, at 12 (1981).]

otherwise. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a); *Burgo v. Commissioner*, 69 T.C. 729, 743 (1978). To meet this burden, petitioners must prove either that someone else made the expenditures or that the funds used were obtained from nontaxable sources, e.g., loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. See *Taglianetti v. United States*, 398 F.2d 558, 563 (1st Cir. 1968), affd. 394 U.S. 316 (1969).

In *Holland v. United States*, 348 U.S. 121, 135–137 (1954), the Supreme Court sanctioned use of the net worth method of income reconstruction subject to certain safeguards. This method is substantially analogous to the cash expenditures method. The Supreme Court's safeguards may be summarized as follows:

(1) Respondent must track down relevant leads which might show alternative sources of nontaxable income if such leads are reasonably susceptible to being checked, and

(2) respondent must give proof of a likely source of taxable income.

Thus, the reasonableness of respondent's legal position turns upon his satisfaction of the safeguards enumerated above in light of the facts and circumstances known to him subsequent to the filing of the petition.

Petitioners' position during trial on the merits was based on a "cash hoard" which petitioner-wife had purportedly accumulated from gifts and earned income. At an appeals conference held on August 6, 1984, petitioners' counsel presented the cash hoard defense naming petitioner-wife's deceased aunt and parents as the source of approximately $80,000 if gifts over a period of 20 years. It was also argued that a portion of the cash hoard had been saved in prior years by petitioners from earned income sources on which they had paid Federal income taxes.

Petitioners assert that respondent's position in the Tax Court proceeding was unreasonable because respondent presented no evidence negating petitioners' position that the funds had been accumulated over many years from savings and gifts. We disagree. As discussed above, respondent's proposed deficiency is presumptively correct, and the fact that petitioners ultimately prevailed at trial does not establish respondent's position as being unreasonable. *Baker v. Commissioner, supra* at 828. The test imposed upon respondent by *Holland* is whether the Government

has investigated leads furnished by the taxpayer which are reasonably susceptible of being checked and which might trace the income to a nontaxable source.

Petitioners prevailed on their cash hoard defense because of the testimony given by 23 witnesses at the trial. Respondent was notified by letter dated October 15, 1984—two weeks prior to the call of the calendar—of the names and addresses of 25 witnesses, in addition to petitioners and petitioner-wife's parents,[9] who would be called to testify at the trial of the case. On October 28, 1984, one day before the call of the calendar, petitioners' representative withdrew 8 of the witnesses previously named and added 2 additional witnesses. We quote here from the oral findings of fact and opinion:

We must determine, therefore, whether the objective evidence should be given conclusive weight which raises essentially the question of the credibility of the testimony. This case is unusual in that there have been many witnesses unrelated to Petitioners and with no reason to fail to testify truthfully albeit in a light most favorable to Petitioners. The existence of the cash hoard and the fact that it was old money was confirmed by bank tellers who received large deposits of currency during the years before the Court. Friends of Petitioners have not only testified as to their frugal habits and as to the long hours of work, but as to bits and pieces of observations and confirmations which tend to corroborate Mrs. DeVenney's testimony. We find that the testimony—we find all the testimony worthy of acceptance and fully credible including the testimony of Petitioners and of Mr. and Mrs. Smith, even though we recognize that the circumstances are at best illogical and unusual.

We conclude that the Government satisfied its obligation to track down relevant leads since it had no leads as to this testimony, which was crucial to our decision in this case. Of the 29 witnesses whose names and addresses were provided to respondent 2 weeks before the call of the calendar, respondent had advance knowledge of only 6. Respondent had no advance knowledge of the 2 witnesses whose names and addresses were provided on the day before the call of the calendar.

It is unreasonable to expect respondent in the short period remaining before the calendar call to track down and interrogate the unrelated third parties named as witnesses. Having listened to, and been persuaded by, the testimony of these witnesses whose

---

[9]Respondent knew that petitioners and petitioner-wife's parents would testify. Petitioners made no showing, however, that the details of their testimony were disclosed to respondent prior to trial.

existence was effectively unknown to respondent, we hold that respondent's position was reasonable subsequent to the filing of the petition and until the testimony was actually received. Respondent cannot be expected to incorporate the testimony of unknown witnesses into his analysis of a case. Silence, followed by surprise testimony, was the strategy embarked upon by petitioners in this case. We do not think that this strategy materially benefited petitioners from the standpoint of our findings of fact. However, it did have the effect of making respondent's position reasonable until the testimony was received. A lead that is essentially unknown before trial cannot be followed. *United States v. Smith,* 611 F.2d 375 (6th Cir. 1979); *United States v. Hamilton,* 620 F.2d 712 (9th Cir. 1980). Also we cannot fail to note that the existence of a cash hoard is endlessly claimed by taxpayers to explain the existence of otherwise unexplained sources of funds. It is rare indeed that a taxpayer successfully proves this contention. Thus, petitioners knew or should have known that, on these facts, their claims of a cash hoard would be met with some suspicion.

The second prong of the *Holland* test requires the Service to provide evidence supporting the inference that the petitioners' cash expenditures were attributable to currently taxable income. Petitioners assert that respondent presented no evidence showing an underreporting of income from any of petitioners' three businesses, nor any evidence demonstrating the existence of unreported sources of taxable funds. In short, this argument fails for the reasons stated above. Petitioners withheld evidence in the form of witnesses and their testimony which was crucial to a determination that no alternative taxable source of income existed. The nature of petitioners' businesses, and their commitment to them, became apparent largely through the testimony of these witnesses during trial. In the absence of this highly credible testimony, the mere existence of three closely held businesses would not preclude the possibility of unreported income. Thus, respondent met his burden as of the time of trial and was reasonable in applying the cash expenditures method as he did.

We hold that petitioners are not a "prevailing party" as required under section 7430(c)(2) and disallow the award for litigation costs. Petitioners selected silence as their litigation strategy. They must accept its consequences. Thus, we do not

reach petitioners' obligation to exhaust the administrative remedies available to them.

Based on the foregoing, petitioners' motion for recovery of litigation costs will be denied.

*An appropriate order will be entered.*