VICTOR E. VAN DUZER AND JANE N. VAN DUZER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Duzer v. Commissioner
Docket No. 25802-88
United States Tax Court
T.C. Memo 1992-62; 1992 Tax Ct. Memo LEXIS 67; 63 T.C.M. (CCH) 1970; T.C.M. (RIA) 92062; February 3, 1992, Filed *67 An appropriate order and decision will be entered. Jonathan Cobb Dickey and David S. Foster, for petitioners. Steven J. Sibley, for respondent. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: In a memorandum opinion filed June 5, 1991, [1] we decided all the contested issues with respect to respondent's deficiency determinations in petitioners' favor. Subsequent to our opinion, petitioners moved, pursuant to Rule 231, [2] for an award of reasonable litigation and administrative costs in the amount of $ 273,178.49. The issues for decision are whether respondent is liable for reasonable litigation and administrative costs and, if so, the amount thereof. Respondent admits that petitioners have substantially prevailed *68 with respect to the most significant issues or series of issues presented as required by section 7430(c)(4)(A)(ii). Respondent also admits that petitioners have exhausted their administrative remedies and have not unreasonably protracted these proceedings. See sec. 7430(b)(1) and (3). Respondent objects to petitioners' motion on the grounds that petitioners do not come within the statutory definition of a "prevailing party" set forth in section 7430(c)(4)(A), because they have not shown that the position of the United States was not substantially justified, and because petitioners fail to meet the net worth requirements contained in 28 U.S.C. sec. 2412(d)(1)(B) (1988) as incorporated by section 7430(c)(4)(A)(iii). Respondent also disagrees that petitioners' claimed costs are reasonable in amount. Each of the parties filed lengthy memoranda with attachments thereto in support of their respective positions. No hearing with respect to petitioners' motion was requested by either party. [3]
*69 Petitioners bear the burden of proving that they are entitled to litigation and administrative costs. Dixson Corp. v. Commissioner, 94 T.C. 708, 714-715 (1990); Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990). We begin our analysis by determining whether respondent's position in these proceedings was "not substantially justified". The fact that respondent ultimately was unsuccessful at litigation is insufficient, standing alone, to render his position not substantially justified; substantial justification is not the same as winning. Gantner v. Commissioner, 92 T.C. 192, 198 (1989), affd. 905 F.2d 241 (8th Cir. 1990); see Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1989); Minahan v. Commissioner, 88 T.C. 492, 498 (1987). In order to find that respondent was not substantially justified, we must determine whether respondent's position was unreasonable. Sher v. Commissioner, supra at 84. A determination of reasonableness is based upon all the facts and circumstances, as *70 well as the legal precedents relating to the case. In meeting their burden, petitioners must show that the legal precedents do not substantially support respondent's position given the facts available to respondent. Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 688; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). The record in this case, with respect to the issues which were tried, is set out in our memorandum opinion at T.C. Memo. 1991-249. No purpose would be served by repeating the underlying facts and our analysis. Suffice it to say that the principal issue concerned whether a portion of the purchase price of each windfarm purchased by Victor Van Duzer from FloWind in 1984 and 1985 was paid for something other than the tangible assets. This, in turn, would determine the amount of investment and energy tax credits and depreciation attributable to the tangible assets. Respondent's position was that petitioners' stated purchase price for the windfarms exceeded the value of the tangible assets. Respondent's argument was that petitioners paid an excessive price for the windfarms because of tax benefits *71 and favorable financing and that a significant portion of the purchase price should be allocated to availability and output warranties. Issues concerning valuation and the allocation of a stated purchase price between tangible and intangible assets present difficult questions. This is especially true where the assets being valued involve new technologies as was true in the instant case. We made our findings after reviewing many voluminous documents and hearing the testimony of various witnesses, some of whom testified as experts. The valuation experts used valuation methods involving arcane concepts. We made judgments with respect to the credibility of both the expert and nonexpert witnesses. In doing so, we had the advantage of observing how the testimony of these witnesses stood up against cross examination and evidence offered in rebuttal. This process caused us to conclude that petitioners' valuation experts were credible. [4] This process also revealed what we believed to be certain flaws in the valuation of respondent's expert. Ultimately, we decided the issues in petitioners' favor. Nevertheless, based upon the entire record, we cannot say that respondent's position *72 in this case was unreasonable. Respondent's primary position was that a significant portion of petitioners' purchase price was allocable to the seller's warranties that accompanied the purchase of the windfarms. Neither party cited prior cases which dealt directly with this issue. Petitioner Victor Van Duzer acknowledged that the warranties were an important factor in his decision to purchase the windfarms. The question presented to us was whether the warranties were so significant that they should have a separate value placed on them with a corresponding decrease in the value petitioners attributed to the tangible assets. In determining this issue, we stated "When warranties are offered as the standard practice of an industry, *73 such warranties generally add little or nothing to the value of the warranted asset. See Houchins v. Commissioner, 79 T.C. 570, 593-594 (1982); Grodt & McCay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1239 (1981)". Van Duzer v. Commissioner, T.C. Memo. 1991-249. We then went on to find that the evidence showed that FloWind's competitors made warranties similar to those made to petitioners in connection with the sale of windfarms. We did not, however, preclude the possibility that, in a given set of facts, warranties could be purchased as separate intangible assets. While respondent did not prevail in his arguments, the tangible assets in this case involved relatively new technology, which no doubt enhanced the risks of nonperformance, thus making the warranties more significant to a potential buyer than they might be in a case where the tangible asset being purchased had a long performance history and was relatively risk-free. Indeed, as petitioners point out, the favorable tax benefits at issue in this case resulted from Congress' desire to induce investment in this new technology which, without the tax benefits, *74 might not have occurred. Petitioners argue that respondent may not rely on an inherently unreasonable expert opinion in order to claim that respondent's position was substantially justified. In doing so, petitioners cite our opinions in Minahan v. Commissioner, supra; Frisch v. Commissioner, 87 T.C. 838 (1986). We believe that each of these cases is distinguishable. In Frisch, we found that significant information was purposely ignored in arriving at respondent's valuation position in an endeavor to coerce taxpayers into a settlement. In Minahan, we found that respondent's expert valuation was based upon a legal premise that had been consistently rejected by both this Court and other courts for decades. Neither of these circumstances is present in this case. The materials submitted by both parties with respect to petitioners' motion are replete with accusations and counteraccusations regarding specific instances which they allege occurred during the examination, settlement, and trial preparation stages of this case. In light of the foregoing, we see no benefit to be gained by wading into these matters. We will, however, address *75 petitioners' contention that it was unreasonable for respondent to have deferred conceding petitioners' profit objective and the economic substance of the windfarms until after the trial. At the beginning of the trial, it was clear that neither of these issues was respondent's primary position. Respondent explains he did not concede these issues prior to trial because he felt entitled to hear all the evidence first. After the trial, respondent notified petitioners of his concessions in a timely manner. Under the circumstances presented by this case, we do not consider respondent's actions to be unreasonable, especially in light of the fact that the evidence presented at trial was equally relevant to the issues that were presented to the Court for decision. Based upon the entire record in this case, we find that petitioners have not established that respondent's position was "not substantially justified". As a result, petitioners have not established that they are prevailing parties within the meaning of section 7430(c)(4)(A). Having made this finding, it is unnecessary to determine whether petitioners meet the net worth requirements of 28 U.S.C. sec. 2412(d)(1)(B) as incorporated *76 by section 7430(c)(4)(A)(iii), or whether the amount of costs being claimed is reasonable. Petitioners' motion for litigation and administrative costs is therefore denied. An appropriate order and decision will be entered. Footnotes
1. See Van Duzer v. Commissioner, T.C. Memo. 1991-249↩. 2. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the relevant periods.↩
3. In petitioners' motion filed July 1, 1991, petitioners requested a hearing "if the Court proposes to disallow any portion↩ of the requested costs." (Emphasis added.) However, in their supplemental memorandum filed Sept. 17, 1991, petitioners state "No hearing with respect to the motion for costs is requested by either Petitioners or Respondent."
4. We note, however, that there was a significant variation between the valuations arrived at by petitioners' principal expert using the market and income approaches and the actual purchase prices of the windfarms. See Van Duzer v. Commissioner, T.C. Memo. 1991-249↩.