**In re SOUTHEAST STORES, INC., Chapter 7 Debtor.**

**SOUTHEAST STORES, INC., Plaintiff,**

**v.**

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 88–02022–RT.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 9, 1993.

John F. Ames, Hubard, Samuels, & Ames, P.C., Richmond, VA, Chapter 7 Trustee.

Deborah Stanley, Sp. Asst. U.S. Atty., Richard Cullen, U.S. Atty., E.D.Va., Richmond, VA, James J. Wilkinson, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

Gregg R. Nivala, Richmond, VA, Asst. U.S. Trustee.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The case is before the court on motion of the chapter 7 trustee requesting an award of attorneys fees and costs against the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 7430(a). The amount sought

is $6,293.01. As his basis the trustee alleges IRS was "not substantially justified" in filing a proof of claim in the case in the amount of $202,878.92. The court ultimately ruled that only $5,187.00 of the IRS's claim would be allowed. Both parties have submitted memoranda of law on the issues raised by the trustee's motion.

For the reasons stated in this opinion the court concludes that the trustee is not entitled to recover under 26 U.S.C. § 7430, and his motion will be denied.

### Facts

Southeast Stores, Inc., which operated a chain of retail stores, filed a chapter 11 petition on September 16, 1988. Eventually, debtor ceased its operations and was converted to chapter 7 on February 23, 1989. John F. Ames was appointed chapter 7 trustee, and he has also been appointed to represent himself as attorney for the trustee.

In the Summer of 1992 the trustee objected to several proofs of claim filed in the case, including that filed by the IRS on June 27, 1990, for unpaid payroll taxes (Forms 940 and 941) in the amount of $202,878.92. Hearing on the objection was set for October 13, 1992.

On the date of the initial hearing on the objection, it became apparent to the court that little or no advance effort had been made by counsel to resolve the objection without the necessity for the court to hear evidence. The trustee thereupon requested a continuance of approximately 60 days so that he might research whether any of the taxes at issue had been paid. Counsel for the IRS did not oppose the continuance but stated that the amount of the claim was based on the difference between actual tax deposits made by the debtor and the ultimate tax liability computed by the IRS pursuant to Internal Revenue Code § 6020(b), under which IRS prepares and files so called "dummy returns" on behalf of a nonfiling taxpayer. The court contin-

ued the hearing until December 16, 1992, and instructed the trustee to be prepared to present any evidence contradicting the IRS claim.

At hearing on December 16, 1992, it was again apparent to the court that little effort had been made by either counsel to resolve the matter by agreement. The trustee proceeded to put on evidence tending to show that debtor had paid its postpetition payroll taxes. His evidence primarily consisted of the monthly operating reports filed by the debtor while the case was under chapter 11. The trustee did not produce any tax returns filed by the debtor for the tax periods in question or any canceled checks showing that taxes had been paid. The trustee stated that this evidence may have been available in a local facility where the extensive business records of the debtor were being stored.

Kevin Jacobe, CEO of the debtor prepetition and while it operated as debtor in possession, testified that he believed all payroll taxes had been paid during the bankruptcy for taxable periods in 1988 and 1989. He also testified that he believed the IRS assigned the debtor a new taxpayer identification number after the debtor filed its chapter 11 petition and that the appropriate tax deposits were made under the new number.[1] The trustee introduced into evidence a verification of fiduciary tax deposits (Form 6123) which had been filed in the bankruptcy case with one 'of the debtor's chapter 11 monthly operating reports and which contained the alleged new taxpayer identification number. Jacobe testified that he thought the IRS assigned the new number in writing, but he was unable to produce any documentation. He indicated this evidence may have been available in storage with debtor's business records.

Jacobe further explained that in his view the IRS's tax figure was substantially inflated because the returns filed by the IRS did not take into account the debtor's drastic reductions in gross wages paid begin-

---

**1.** However, counsel for the IRS proffered that the alleged new taxpayer identification number was never assigned to the debtor, that this number was assigned to a separate and distinct tax-

payer, and that the IRS had no record of ever assigning the debtor a new taxpayer identification number.

ning in September 1988. Jacobe testified that after debtor filed bankruptcy it severely reduced its operations by closing 100 of 118 stores. By the end of 1988 it had closed all but seven operating stores. Accordingly, this resulted in an enormous reduction in gross wages for the last two quarters of 1988 and the first quarter of 1989, after which debtor ceased operations. These gross wage figures were reflected in the monthly operating reports filed by the debtor while the case was under chapter 11. As a result, according to the witness, computations of payroll tax liability for last two quarters of 1988 and the first quarter of 1989 based on previous quarters [2] would have been extremely inflated.

At the conclusion of his evidence, the trustee moved for summary judgment on his objection to the IRS proof of claim. The court denied the motion from the bench but continued the hearing to January 20, 1993, at which time the court stated the IRS would have the burden of going forward to put on evidence to substantiate its claim.

At the conclusion of the hearing on December 16, 1992, it was the court's belief based upon Jacobe's testimony and the comments of IRS counsel that some of the problem stemmed from the debtor's possible use of an incorrect tax identification number. It seemed possible with the new information revealed at the hearing that the IRS would now be able to find the debtor's tax payments from the new tax number.

Prior to the next hearing, the trustee filed the instant motion, entitled Motion Requiring Internal Revenue Service to Modify Or Withdraw Claim And Memorandum and IRC Sec. 7430 Notice.

When the case was called for hearing on January 20, 1993, the court was advised that counsel had made no significant effort to resolve their dispute by agreement; in fact counsel had not even discussed the result of IRS's investigation of its records since the prior hearing. At hearing, IRS

counsel proffered that further investigation had revealed the debtor filed all required quarterly withholding tax returns (941) for calendar year 1988. However, IRS could find no record that debtor filed unemployment returns (940) for 1988 or 1989 or a withholding return for debtors last taxable period of operation, the first quarter of 1989. Neither could IRS find any information corroborating the debtor's claim that a new taxpayer identification number was issued by IRS upon the debtor's filing bankruptcy. Representatives from the IRS testified that they used the gross wage figures presented at the December 16 hearing to re-calculate the debtor's outstanding tax liability, both prepetition and postpetition.

Based upon the new computations, according to IRS counsel and witnesses, IRS was prepared to reduce the tax claim to approximately $11,500.00 as an administrative tax claim, $2,500.00 reallocated for 941 tax as a priority claim, and $125.00 as a general unsecured claim. Although this was a substantial reduction from the original claim, the trustee maintained his position that all taxes had been paid based upon Jacobe's testimony.

After a lengthy hearing the court issued a bench ruling which allowed the IRS an administrative tax claim in the amount of $5,685.00 less a credit of $498.00, for a total of $5,187.00. In the absence of documentary evidence that debtor had filed 940 and 941 returns for the first quarter of 1989, the court concluded that debtor had not filed these returns for these periods, and the claim allowed represented these unpaid taxes.

Subsequent to the hearing, the trustee filed his request for attorney fees in which he billed his attorney time at an hourly rate of $140.00 and after January 1, 1993, $150.00. The total fees claimed are $6,184.00 plus costs of $109.01.

*Discussion and Conclusions of Law*

By his motion, the trustee asks this court to order IRS to reimburse his attorney fees

**2.** This is the usual method used by IRS in computing tax liability pursuant to Internal Revenue Code § 6020(b).

and costs to the chapter 7 estate pursuant to 26 U.S.C. § 7430 in the total amount of $6,293.01. This statute, which contains an obvious waiver of sovereign immunity,[3] provides that a party who prevails on the merits in a tax case may be entitled to attorney's fees, stating in relevant part:

3. Sovereign immunity is always a potential obstacle to an award of attorney's fees against the government. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 29, 77 L.Ed.2d 580 (1983). The Supreme Court has held that 11 U.S.C. § 106(c) does not waive the United States' sovereign immunity from an action seeking monetary recovery in bankruptcy. *United States v. Nordic Village, Inc.*, — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Although the bankruptcy court does not lack avenues to impose a monetary sanction against a party for frivolous, contemptuous, or vexatious practices, a provision authorizing sanctions does not automatically waive sovereign immunity. *Graham v. United States*, 981 F.2d 1135 (10th Cir.1992).

4. "The term 'court proceeding' means any civil action brought in a *court of the United States* (including the Tax Court and the United States Claims Court)." 26 U.S.C. § 7430(c)(6) (emphasis added).

   This definition raises an issue of whether or not bankruptcy courts are "courts of the United States" since bankruptcy judges are not Article III life-tenured judges. Courts have split on this question when considering whether bankruptcy courts have jurisdiction to award attorneys fees under 26 U.S.C. § 7430, and 28 U.S.C. § 2412 (the Equal Access to Justice Act "EAJA"). *Internal Revenue Service v. Brickell Invest. Corp. (In re Brickell Invest. Corp.)*, 922 F.2d 696, 699–701 (11th Cir.1991) (bankruptcy courts lack jurisdiction to award attorneys fees under § 7430); *see also In re Davis*, 899 F.2d 1136, 1141–42 (11th Cir.1990) (bankruptcy courts lack jurisdiction to award attorneys fees under EAJA); *but see O'Conner v. United States Dept. of Energy*, 942 F.2d 771, 773–74 (10th Cir.1991) (bankruptcy courts have jurisdiction to award attorneys fees under EAJA); *In re Chambers*, 131 B.R. 818, 824 (Bankr.N.D.Ill.1991), *aff'd in part rev'd in part*, 140 B.R. 233, 237 (N.D.Ill.1992) (bankruptcy courts have jurisdiction to grant attorney fee awards under § 7430); *Kreidle v. Internal Revenue Service (In re Kreidle)*, 145 B.R. 1007, 1016 (Bankr.D.Colo.1992) (bankruptcy courts have jurisdiction to award attorneys fees under § 7430).

   Because the court rules against the trustee on other grounds, I need not address this issue in detail. However, until the Fourth Circuit rules otherwise I assume without deciding that bankruptcy courts have jurisdiction to award attorneys fees pursuant 26 U.S.C. § 7430 in the appropriate circumstances.

(a) In any ... *court proceeding*[4] which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the *prevailing party*[5] may be awarded a judgment ... for—

5. The term "prevailing party" means any party in any proceeding to which subsection (a) applies:
   (i) which establishes that the position of the United States in the proceeding was *not substantially justified,*
   (ii) which—
      (I) has *substantially prevailed* with respect to the amount in controversy, or
      (II) has substantially prevailed with respect to the most significant issue or set of issues presented, *and*
   (iii) *which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28, ... and meets the requirements of section 2412(d)(2)(B)....*
   26 U.S.C. § 7430(c)(4) (emphasis added).

   This essentially sets forth a three part test to determine whether or not the movant is a "prevailing party:"
   (1) the party must sustain its burden of proof that the position of the IRS was not substantially justified;
   (2) the party must substantially prevail;
   (3) and the requirements of § 2412(d)(1)(B) & (2)(B) (the Equal Access to Justice Act EAJA) must be satisfied.

   In order to satisfies the third part of the "prevailing party" test two subsections of the Equal Access to Justice Act "EAJA," 28 U.S.C. § 2412(d)(1)(B) must be satisfied. Section 2412(d)(1)(B) states:
   A party seeking an award of fees and other expenses shall, *within thirty days* of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an *itemized statement* from any attorney ... representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed....
   26 U.S.C. § 2412(d)(1)(B) (emphasis added).

   The second subsection, § 2412(d)(2)(B) states: '[P]arty' means ... (ii) any owner of an ... organization 26 U.S.C. § 2412(d)(2)(B).

   There is serious doubt whether a chapter 7 bankruptcy trustee satisfies the definition of "party" in 26 U.S.C. § 2412(d)(2)(B). *In re Brickell Invest. Corp.*, 922 F.2d 696, 702 (11th Cir. 1991); *In re Davis*, 899 F.2d 1136, 1142 (11th Cir.1990). Chapter 7 bankruptcy trustees are not listed in the definition of "party," and the only theory under which they could satisfy the definition is if they are considered "*owners of*

... (2) *reasonable litigation costs* [6] incurred in connection with such court proceeding.

26 U.S.C. § 7430(a)(2) (emphasis added).

The taxpayer has the burden of proof when requesting an award of attorneys fees pursuant to 26 U.S.C. § 7430. 26 U.S.C. § 7430(c)(4)(A)(i); *see, e.g., Humphreys v. United States*, 723 F.Supp. 1421, 1424 (D.Kan.1989); *see also* Jerome S. Horvitz and Annette Hebble, *"Substantial Justification" Further Defined by Phillips*, 6 Akron Tax J. 1, 4 (1989).[7] In order to be entitled to an award under § 7430 a taxpayer must be found to be a "prevailing party." 26 U.S.C. § 7430(a). To qualify as a "prevailing party" the taxpayer must have substantially prevailed with respect to the amount in controversy or with respect to the most significant issue and establish that the position of the United States in the

an *organization*." The "organization" being the creditors of the chapter 7 estate, and the "ownership" being the chapter 7 trustee's representation of these creditors. Since the court rules against the trustee on other grounds, the court is willing to accept this admittedly tenuous theory *without fully exploring its pitfalls.*

**6.** The term "reasonable litigation costs" includes:

... (B)(iii) reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees *shall not be in excess of $75 per hour* unless the court determines ... [otherwise]
...
26 U.S.C. § 7430(c)(1)(B)(iii) (emphasis added).

**7.** This is a critical distinction from the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), and the statute governing Administrative Procedures for Government Agencies, 5 U.S.C. § 504(a)(1). In these statutes the burden is on the government to prove their position was substantially justified:

Except as otherwise specifically provided by statute, a court *shall award* to a prevailing party ... fees ... *unless the court finds that* the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added);

An agency that conducts an adversary adjudication *shall award,* to a prevailing party ... fees ... *unless* the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make and award unjust.

5 U.S.C. § 504(a)(1) (emphasis added).

proceeding was not substantially justified. 26 U.S.C. § 7430(c)(4).

Once it is established that a taxpayer is a "prevailing party" the court must decide whether any of the limitations found in § 7430(b) preclude the fee-shifting remedy. In short, before the court can award fees under § 7430 it must find that the taxpayer exhausted any administrative remedies available within the IRS [8] and that the taxpayer was not contributorily negligent by "unreasonably protracting" the litigation. *See* 26 U.S.C. § 7430(b)(1) & (4).

■ Since the burden of proof is on the taxpayer, the position of the IRS is presumed to be substantially justified. To be "not substantially justified," the litigation position of the IRS must be unreasonable, without a reasonable basis in law or in fact. *Pierce v. Underwood,* 487 U.S. 552, 565–66,

Section 7430 of the Internal Revenue Code does not contain this language placing the burden on the government, and these two statues are inapplicable to actions brought under 26 U.S.C. § 7430.
*See* 28 U.S.C. § 2412(e); 5 U.S.C. § 504(f).

In order *to* qualify as a "prevailing party" the burden of proof is on the taxpayer to establish that the position of the Internal Revenue Service was not substantially justified:

The term "prevailing party" means *any party* ... *which establishes* that the position of the United States in the proceeding was not substantially justified.

26 U.S.C. § 7430(c)(4)(A)(i) (emphasis added).

**8.** 26 U.S.C. § 7430(b)(1) requires the taxpayer to exhaust administrative remedies within the IRS before being entitled to an award under 26 U.S.C. § 7430(a). However, in this case the dispute arose when the IRS filed its proof of claim. Once the IRS files a proof of claim, there are arguably no administrative remedies available. The only remedy was the remedy the trustee pursued, which was to object to the proof of claim under the Bankruptcy Code rules. *In re Brickell Invest. Corp.,* 922 F.2d 696, 703–04 (11th Cir.1991). Furthermore, the court has *no evidence* whether or not the Appeals Conference process was made available through the issuance of a preliminary notice of proposed deficiency (30–day letter). *Kreidle v. Commissioner,* 145 B.R. 1007, 1017 (Bankr.D.Colo.1992). If a 30–day letter was not received administrative remedies are considered exhausted. *Id.* (citing Treas.Reg. § 301.7430(1(f). Therefore, for the purposes of this opinion the court is willing to find that administrative remedies have been exhausted pursuant to 26 U.S.C. 7430(b)(1)).

108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988); *Graham v. United States,* 981 F.2d 1135, 1139 (10th Cir.1992). A position can be justified even though it is not correct, and it can be substantially justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact. *Pierce v. Underwood,* 487 U.S. at 566 n. 2, 108 S.Ct. at 25 n. 2. Whether the government's position is "substantially justified" must be determined based upon all the facts and circumstances surrounding the proceeding and the fact that the government loses the case is not determinative. *Phillips v. Commissioner,* 851 F.2d 1492, 1499 (D.C.Cir.1988). Rather than articulate a determinative test for unreasonableness, Congress enumerated the following criteria to be evaluated in conjunction with legal precedent and the facts in a given case:

    (1) whether the Government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case,

    (2) whether the Government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and

    (3) such other factors as the court finds relevant.

Horvitz & Hebble, *"Substantial Justification" Further Defined by Phillips,* 6 Akron Tax J. 1, 5 (1989) (citing H.R.Rep. No. 97–404, 97th Cong., 1st Sess. 12 (1981)).

In short, the taxpayer must prove the Government's awareness that its litigation position was clearly inconsistent with the facts of the case or controlling legal precedent or that there was outright administrative bungling which violates any standard of fair play. *See* Horvitz & Hebble, *"Substantial Justification" Further Defined by Phillips,* 6 Akron Tax J. 1, 6 (1989).

The allegation by the trustee here is that the IRS had no factual basis to submit a proof of claim in the amount of $202,878.92 and therefore that the claim was "not substantially justified." In fact, the trustee argues that absolutely no taxes were due and owing and accordingly that the position of IRS was bogus and worthy of the fee-shifting remedy provided for in 26 U.S.C. § 7430.

The original proof of claim filed by the IRS was based on an assessment derived from 940 and 941 payroll tax returns filed by the IRS pursuant to Internal Revenue Code § 6020(b). These returns had been prepared using estimated gross wages based upon figures from previous periods for which the IRS had records of returns filed by the debtor. Although the IRS's proof of claim eventually proved incorrect the original claim had a substantial factual basis and was not arbitrarily derived.

It became evident at the second hearing on the trustee's objection to the claim that there was substantial confusion over whether the debtor had used the proper taxpayer identification number. The trustee produced some evidence through the testimony of the debtor's former CEO that the debtor had actually made deposits of 940 and 941 taxes for periods in question. The trustee introduced the debtor's monthly chapter 11 bankruptcy reports as evidence that some tax deposits were in fact made. However, the trustee did not produce any written tax returns, any canceled checks, or any written verification that a new taxpayer identification number had been assigned the debtor by the IRS. Instead, the trustee simply offered the IRS access to a storage bin where the debtor's business records were stored.

Although the evidence was scant, the debtor's former officer's testimony indicated that IRS should further investigate the factual basis and accuracy of its proof of claim; for this purpose since it appeared that the trustee had not made the specific information available to IRS prior to the hearing, the court scheduled a third hearing. The court also advised both counsel to make a good faith effort to settle the matter by resolving the correct tax due, if any.

Prior to the final hearing on the trustee's objection, IRS did investigate further and concluded that the amount of its administrative claim was approximately $11,500.00.

However, despite the court's instructions counsel apparently had made no effort to reach agreement. As a result the court was required to hear still more extensive testimony from both sides of a nature which in the court's view could have been averted. At the third hearing, the court eventually allowed the IRS an administrative tax claim in the amount of $5,187.00. The court reduced the IRS's revised claim of $11,500.00 because this sum was still based upon estimates of debtor's payroll which were open to question.

■ Contrary to the argument of the trustee and despite the lack of effort by both counsel to achieve a resolution without trial, it has not been established that the position of the IRS was "not substantially justified." In summary, the evidence reveals that because all employment tax returns for the debtor were not filed or could not be found, IRS estimated the tax based upon debtor's historical filings. IRS made these estimates in accordance with its standard practice. When the taxpayer's trustee finally furnished appropriate information at the second hearing on the objection to claim, IRS revised its estimate of the tax due and so advised the Court at the next hearing.[9] While it is true that the reduction of the claim was very substantial, this in itself does not make the trustee's case for "not substantially justified" under § 7430.

■ A later concession by the IRS or adverse ruling against the IRS does not alone establish that its earlier position lacked substantial justification. *See, e.g., Pierce v. Underwood,* 487 U.S. 552, 568–69, 108 S.Ct. 2541, 2551–52, 101 L.Ed.2d 490 (1988); *Humphreys v. United States,* 723 F.Supp. 1421, 1424 (D.Kan.1989); *Nordvik v. Commissioner,* 1992 WL 383392, 1992 Tax Ct. Memo LEXIS 770, at *11 (December 29, 1992). Where there are factual questions, the IRS is not obligated to concede the case until the necessary documentation is received to prove the taxpayer's contentions and claims. *Nordvik v. Commissioner,* 1992 WL 383392, 1992 Tax Ct. Memo LEXIS 770, at *12 (December 29, 1992); *Brice v. Commissioner,* 1990 WL 94730, 1990 Tax Ct. Memo LEXIS 367, at *9 (July 11, 1990), *aff'd,* 940 F.2d 667 (9th Cir.1991).

The record before the court is utterly devoid of any evidence of bad faith on the part of IRS. The most that can be said is that the tax representatives made little effort to calculate the correct tax other than to use prescribed standard methods to estimate a tax bill where no returns are filed. The trustee has argued that the information needed was contained in the debtor's monthly financial statements filed with the court. While the court recognizes this as a common sense argument, I am unwilling to conclude that this possible lack of initiative constitutes grounds for IRS liability under § 7430.

The trustee has not shown the factual position of the IRS was unreasonable, despite the fact that he substantially prevailed as to the amount in controversy. Nor has the trustee established severe administrative bungling that would violate any standard of fair play. For the trustee to have expected the IRS to simply accept his word that no taxes were owing is itself unreasonable. Yet this is all the trustee presented to counsel for the IRS until the hearings were conducted on his objection. Moreover, the court denied the trustee's motion for summary judgment at the second hearing precisely because the trustee had produced insufficient evidence to substantiate his position.[10]

Since the court finds the trustee did not carry his burden of proof to establish that

---

9. At the third hearing, IRS acknowledged that debtor had filed 941 returns for 1988, but IRS still had no record of 940 returns for 1988 and 1989 or a 941 return for the first quarter of 1989. It is not completely clear in the record why the IRS had been unable to locate debtor's 1988 941 returns earlier, but it may have been caused by debtor's use of an incorrect taxpayer identification number.

10. I reject the trustee's suggestion that IRS bore the burden of examining debtor's stored business records in an attempt to arrive at the correct tax. Rather, I see that as a taxpayer's burden. It is likely that the entire controversy could have been resolved promptly if the trustee had merely presented copies of debtor's returns.

the position of IRS was "not substantially justified," the trustee cannot be considered a "prevailing party" as defined by 26 U.S.C. § 7430(c)(4)(i) and is not entitled to the fee-shifting remedy provided for in 26 U.S.C. § 7430(a).

 Even if the court were to find that the trustee met all the requirements of 26 U.S.C. §§ 7430(a) and (c)(4)(i), the trustee can still be barred from recovering by 26 U.S.C. § 7430(b)(4), which states:

> No award for reasonable litigation ... costs may be made under subsection (a) with respect to any portion of the ... court proceeding during which the prevailing party has *unreasonably protracted* such proceeding.

26 U.S.C. § 7430(b)(4) (emphasis added).

I believe § 7430(b)(4) requires a good faith effort on the part of the taxpayer to resolve disputes with the IRS before litigating. Awards of attorneys fees may be denied where a taxpayer is in possession of information relevant to case settlement and fails to be forthcoming in a timely manner with those facts and arguments. *See Nordvik v. Commissioner,* 1992 WL 383392, at *10 1992 Tax Ct. Memo LEXIS 770, at *12 (December 29, 1992). Where a taxpayer waits until the last minute to contact opposing counsel and to submit facts which demonstrate that the IRS's position is incorrect, the taxpayer must bear the consequences. *Polyco, Inc. v. Commissioner,* 91 T.C. 963, 968, 1988 WL 127834 (1988) (citing *DeVenney v. Commissioner,* 85 T.C. 927, 933, 1985 WL 15421 (1985)).

In sum, the court believes the controversy over the IRS claim boiled down to a factual dispute that could have been resolved by counsel with a modest effort. The noncooperative conduct of counsel in this litigation has been fully discussed above. Without attempting to determine whether one counsel was more at fault than the other, I find that both counsel here must share the responsibility for the manner in which the controversy was pre-

sented to the court. As such, I hold that § 7430(b)(4) precludes the trustee's recovery of his attorney fees and costs.

A separate order will be entered denying the trustee's motion for an award of litigation costs pursuant to 26 U.S.C. § 7430.[11]

---

**11.** The trustee has requested an attorney fee in the amount of $6,184.00 based upon an hourly rate of $140.00 and after January 1, 1993, $150.00. However, even were the court to rule in his favor, the trustee would be entitled to a maximum attorney fee of $3,270.00 since § 7430(c)(1) limits the attorney's rate to $75.00 per hour, unless the court determines otherwise.