T.C. Memo. 2004-193

UNITED STATES TAX COURT

ROBERT SCHWARTZ AND DIANE SCHWARTZ, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13248-00.                    Filed August 26, 2004.

Ira B. Stechel, for petitioners.

Peggy J. Gartenbaum, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge:  This case is before the Court on
petitioners' motion for award of reasonable litigation costs
pursuant to section 7430 and Rule 231.[1]  We see no reason for an

_____

    [1]  All references to sec. 7430 are to that section of the
Internal Revenue Code as in effect at the time the petition was
filed, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

evidentiary hearing on this matter.  See Rule 232(a)(2).

Accordingly, we rule on petitioners' motion on the basis of the

parties' submissions and the existing record.  See Rule

232(a)(1).  The portions of our opinion on the merits in the

instant case, <u>Schwartz v. Commissioner</u>, T.C. Memo. 2003-86

(Schwartz I) (holding that a yacht racing activity was engaged in

with an actual and honest objective of making a profit), that are

relevant to our disposition of this motion are incorporated

herein by this reference.

After concessions,[2] the issue for decision is whether

petitioners are the "prevailing party" in the underlying tax

case--specifically, whether respondent's position was

substantially justified.

Section 7430 provides for the award of litigation costs to a

taxpayer in a court proceeding brought against the United States

involving the determination of any tax, interest, or penalty

pursuant to the Internal Revenue Code.  An award of litigation

costs may be made where the taxpayer (1) is the "prevailing

party", (2) exhausted available administrative remedies, (3) did

---

[2] Respondent concedes that petitioners substantially
prevailed with respect to the most significant issue, met the net
worth requirements, exhausted their administrative remedies, and
did not unreasonably protract the Court proceeding.  Respondent
did not dispute that the costs claimed by petitioners are
reasonable.  Accordingly, we conclude that respondent waived this
issue.  See <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 683 (1989);
<u>Levert v. Commissioner</u>, T.C. Memo. 1989-333, affd. without
published opinion 956 F.2d 264 (5th Cir. 1992).

not unreasonably protract the judicial proceeding, and (4) claimed reasonable litigation costs.  Sec. 7430(a), (b)(1), (3), and (c).  These requirements are conjunctive, and failure to satisfy any one will preclude an award of costs to petitioners. See Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

To be a "prevailing party" (1) the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented, and (2) at the time the petition in the case is filed, the taxpayer must meet the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B).  Sec. 7430(c)(4)(A).  A taxpayer, however, will not be treated as the prevailing party if the Commissioner establishes that the Commissioner's position was substantially justified.  Sec. 7430(c)(4)(B).  For purposes of the court proceedings, the Commissioner's position is that which was set forth in the answer.  Sec. 7430(c)(7)(A); Huffman v. Commissioner, 978 F.2d 1139, 1147-1148 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144; Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997).

The substantially justified standard is "essentially a continuation of the prior law's reasonableness standard." Swanson v. Commissioner, 106 T.C. 76, 86 (1996).  A position is substantially justified if it is justified to a degree that could satisfy a reasonable person and has a reasonable basis in both

fact and law.  Pierce v. Underwood, 487 U.S. 552, 565 (1988);[3] Huffman v. Commissioner, supra at 1147; Swanson v. Commissioner, supra at 86.  A position that merely has enough merit to avoid sanctions for frivolousness will not satisfy this standard. Pierce v. Underwood, supra at 566.

The determination of reasonableness is based on all of the facts and circumstances surrounding the proceeding and the legal precedents relating to the case.  Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 694-695 (1990).  A position has a reasonable basis in fact if there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Pierce v. Underwood, supra at 565.  A position is substantially justified in law if legal precedent substantially supports the Commissioner's position given the facts available to the Commissioner.  Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 688.  Determining the reasonableness of the Commissioner's position and conduct requires considering what the Commissioner knew at the time.  Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

---

[3]  Although the dispute in Pierce v. Underwood, 487 U.S. 552 (1988), arose under the provisions of the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412(d), the relevant provisions of the EAJA are almost identical to the language of sec. 7430. Cozean v. Commissioner, 109 T.C. 227, 232 n.9 (1997).  We, therefore, consider the holding in Pierce v. Underwood, supra, to be applicable to the case before us.  Id.

The fact that the Commissioner loses on the merits or concedes the case does not establish that a position was not substantially justified; however, it is a factor to be considered.  <u>Powers v. Commissioner</u>, 100 T.C. 457, 471 (1993), affd. in part and revd. in part on another ground 43 F.3d 172 (5th Cir. 1995).

In Schwartz I, after an analysis of the facts of the case under the factors provided in section 1.183-2(b), Income Tax Regs., we held that the yacht racing activity was engaged in with an actual and honest objective of making a profit.  The stipulated facts, exhibits, and testimony, however, contained many facts that supported a finding that the yacht racing activity was not engaged in with an actual and honest objective of making a profit.

Some of these stipulated facts were:

1.  Petitioners did not prepare or review comparison charts or consider any other models before purchasing the <u>Diane</u>.[4]

2.  Record ownership of the <u>Diane</u> has never been in the name of Diane Racing.

3.  In 1996, record ownership of the <u>Diane</u> was transferred from Robert Schwartz to Robert and Diane Schwartz.

---

[4]  All references to the <u>Diane</u> are to the Nelson Marek racing sailboat used in the yacht racing activity.

4.    No lease agreements were entered into between Diane Racing and petitioners regarding Diane Racing's use of the Diane.

5.    Petitioners never formally documented any loans made by them to Diane Racing.

6.    No interest was charged on, no collateral was offered for, and no repayments were made on the aforementioned loans.

7.    During the years in issue, petitioners did not maintain complete records of the races in which the Diane competed.

8.    The president of Diane Racing, petitioners' son, was a full-time medical student or medical resident during the years in issue.

9.    During the years in issue, Diane Racing sustained over $470,000[5] in total losses compared with less than $41,000 of income--i.e., Diane Racing's losses were more than 10 times larger than its income.

10.   The Diane is classified by the U.S. Coast Guard as a recreational vessel.

Furthermore, the documentary[6] and testimonial evidence established, among other things, the following facts:

---

[5] The parties did not specifically stipulate the amount of the loss for 1994.  The parties, however, stipulated Diane Racing's tax return for 1994, which lists Diane Racing's losses for 1994.

[6] We note that almost all of the exhibits were jointly stipulated.

11. Petitioners paid most of Diane Racing's expenses from their personal, and not Diane Racing's, bank account.

12. Although the <u>Diane</u> required a 14-person crew, usually all of the crew were unpaid.[7]

13. Petitioners did not possess a list of crew members.

14. Petitioners did not keep payroll records for the crew members who were paid.

15. Petitioners never filed any Forms W-2 or Forms 1099 for the crew members who were paid.

16. Petitioners did not keep records of the entry fees for any of the races the <u>Diane</u> participated in during the years in issue.

17. Petitioners "hoped" that they might get sponsors for the yacht racing activity, but they "had no idea whether that would or would not work."

18. Mrs. Schwartz, who holds a doctorate in education and is director of a special education master's degree program, was in charge of many financial aspects of Diane Racing.

19. Although petitioners spent, on average, a total of 15 to 20 hours per week working on Diane Racing, there were significant periods when petitioners devoted no time to, or were not involved with, Diane Racing.

---

[7] Diane Racing paid a captain <u>if</u> a captain was needed, and a mate <u>if</u> there was a mate.

20. Petitioners felt that whether they would be able to resell the Diane for a profit "was a question mark".

21. During 1991, 1992, and 1993, the 3 years immediately prior to the years in issue, Diane Racing sustained almost $400,000 in total losses compared with approximately $21,000 of income--i.e., Diane Racing's losses were approximately 19 times larger than its income.

22. Petitioners reported the following amounts of wages on their income tax returns: $550,770, $614,623, $529,342, and $487,315 for 1994, 1995, 1996, and 1997, respectively.

23. Even after subtracting the losses associated with the yacht racing activity, petitioners reported the following amounts of total income on their income tax returns: $476,552, $518,472, $519,354, and $471,541 for 1994, 1995, 1996, and 1997, respectively.

24. Petitioners considered sailing a family activity.

25. Dr. Schwartz and petitioners' children sailed the Diane.

26. Dr. Schwartz enjoyed sailing.

Although in Schwartz I we concluded that petitioners proved that the yacht racing activity was engaged in with an actual and honest objective of making a profit, on the basis of the evidence it was reasonable for respondent to believe that the Court could

find that the yacht racing activity was not engaged in for profit.

There was evidence that petitioners (1) did not operate Diane Racing in a businesslike manner, (2) were not experts regarding yacht racing (and that Mrs. Schwartz was not qualified to handle the financial aspects of Diane Racing), (3) did not devote a significant amount of time to Diane Racing, (4) were unsure whether the Diane would appreciate in value, and (5) derived personal pleasure from the yacht racing activity.

The evidence also established that Diane Racing had a history of substantial losses (nearly $900,000 over 7 years) and did not have profits.  Additionally, there was evidence that petitioners' financial status (they earned over $2.18 million in wages and reported less than $2 million in total income during the years in issue) allowed them to operate Diane Racing without intending to make a profit.  Furthermore, in Schwartz I, we found that petitioners derived personal pleasure from the yacht racing activity.

At trial, the Court had to determine the credibility of the witnesses, including petitioners, and reconcile the conflicting documentary and testimonial evidence.  See Johnson v. Commissioner, T.C. Memo. 1999-237, affd. without published opinion 246 F.3d 674 (9th Cir. 2000).  Although we found petitioners to be credible witnesses, on the basis of the

evidence it was reasonable for respondent to believe that the Court would find that the yacht racing activity was not engaged in for profit.

We conclude respondent has established that his position was substantially justified--it was a reasonable position sufficiently supported by the facts and circumstances of the case and the existing legal precedent.  Accordingly, petitioners are not the "prevailing party".  Sec. 7430(c)(4)(B)(i).  As petitioners are not the prevailing party, we hold that they are not entitled to an award of litigation costs.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered for petitioners</u>.