T.C. Memo. 1996-415


UNITED STATES TAX COURT


CHARLES L. WYNN, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3416-92.                    Filed September 16, 1996.


Charles L. Wynn, Jr., pro se.

<u>Diane D. Helfgott</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciencies in, and additions to, petitioner's Federal income tax:

| | | Additions to Tax | | | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Section 6653(a)(1)(A)[1] | Section 6653(a)(1)(B) | Section 6653(b)(1)(A) | Section 6653(b)(1)(B) | Section 6661 |
| 1986 | $40,946 | $8 | * | $30,584 | ** | $10,195 |
| 1987 | 15,889 | 15 | * | 11,692 | ** | 3,897 |

* 50 percent of the interest due on the portion of the underpayment attributable to negligence or disregard of rules or regulations.

** 50 percent of the interest due on the portion of the underpayment attributable to fraud.

The issues remaining for decision are:[2]

(1)  Does petitioner have unreported income for 1986?  We hold that he does to the extent stated herein.

(2)  Is petitioner entitled for 1986 to an exemption for a dependent child under section 151(a) and (c)?  We hold that he is not.

(3)  Is petitioner liable for 1986 for the additions to tax under section 6653(a)(1)(A) and (B)?  We hold that he is to the extent stated herein.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  At trial, respondent conceded the additions to tax for fraud for 1986 and the deficiency in, and additions to, tax for 1987. Respondent also concedes on brief $95 of the $1,282 State and local income tax refund that petitioner received during 1986 and did not report as income in his 1986 Federal income tax return (return) and that respondent determined was income for that year. On brief, petitioner concedes that for 1986 he has unreported income of $1,187 attributable to that State and local income tax refund.  Although respondent argues for the first time on brief that petitioner is liable for the addition to tax under sec. 6651(a) because he filed his 1986 Federal income tax return (return) on or after Dec. 1, 1988, on brief, petitioner does not dispute that he filed his 1986 return at that time, and he concedes that he is liable for that addition to tax.  See Rule 41(b).

(4)  Is petitioner liable for 1986 for the addition to tax under section 6661(a)?  We hold that he is to the extent stated herein.

                        FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Washington, D.C.

During 1984, petitioner was employed as general manager of Linea Pitti (Linea Pitti), an exclusive clothing store located in the Georgetown Park shopping center (Georgetown Park) in Washington, D.C., and received $23,428.85 from that employment.  During that year, petitioner was also employed by Eduardo, Inc., another clothing store located in Georgetown Park, and received $4,127.99 from that employment.

In July 1984, petitioner purchased a residence located on West Beach Drive, N.W., in Washington, D.C.  In connection with that purchase, petitioner borrowed $156,750 that he was to repay in monthly installments of $1,672.93.

Petitioner reported the total wages that he received during 1984 from Linea Pitti and Eduardo, Inc. in the return that he filed for that year.  He reported no other income in his 1984 return.  In that return, petitioner claimed the following deductions:  $4,009 in home mortgage interest, $530 in credit card interest, $2,131 in State and local income, real property, and sales taxes, and $108 in charitable contributions.

During 1985, petitioner was employed by Eduardo, Inc. and received $23,121.56 from that employment. During that year, he also received $7,102 of income from other sources.

At the end of 1985, petitioner purchased a 1986 Jeep for $9,500 by paying $1,500 as a down payment and borrowing $8,000 that he was to repay in monthly installments of $198.81.

Petitioner reported the wages and the additional income that he received during 1985 in his return for that year. He reported no other income in his 1985 return. In that return, petitioner claimed the following deductions: $19,576 in home mortgage interest, $550 in credit card interest, $139 in interest paid to Ford Motor Credit Company, $4,099 in State and local income,[3] real property, and sales taxes, and $156 in charitable contributions.

On November 24, 1986, petitioner, Ihsan Dura, and Lee Thack incorporated C & I, Inc. (C & I) for the principal purpose of operating a retail clothing business. Petitioner and Ihsan Dura each subscribed for 50 percent of the common stock of C & I for $100,000, or a total subscription of $200,000 ($200,000 stock subscription). During all relevant periods, including 1986, petitioner was president, and Ihsan Dura was vice president, of C & I.

---

[3] Petitioner deducted $1,445 of State and local income taxes in his 1985 return.

The $200,000 stock subscription was paid or otherwise satisfied during 1986. On various dates during December 1986, petitioner and Ihsan Dura deposited funds totaling $149,337.50 into the bank account of C & I at Central Fidelity Bank (C & I bank account). The source of $23,800 of the amount so deposited by petitioner was petitioner's mother, Gloria M. Wynn. During 1986, petitioner and Ihsan Dura also paid one of C & I's accounts payable totaling $20,000 (C & I account payable).

Certain financial workpapers of C & I (C & I's financial workpapers) dated as of December 31, 1986, recorded $149,337.50 of the deposits into the C & I bank account, $10,662.50 of the $20,000 payment of C & I's account payable,[4] and a loan receivable of $40,000 as reductions of the $200,000 stock subscription.

On October 6, 1986,[5] C & I offered to purchase the business known as Linea Pitti for $175,000, of which $30,000 was allocable to inventory and $145,000 was for the assumption of the lease of the premises. That purchase offer was approved, and C & I began operating Linea Pitti in late 1986.

After C & I began operating Linea Pitti in late 1986, it employed petitioner and Ihsan Dura full-time and compensated them

---

[4] C & I's financial workpapers recorded $9,337.50 of the $20,000 payment of C & I's account payable in an account designated "Loan--officers" (officers' loan account).

[5] The record does not disclose how C & I, which was not incorporated until Nov. 24, 1986, could have offered to purchase Linea Pitti on Oct. 6, 1986. Presumably that offer was made in the name of C & I in anticipation of its being incorporated.

for their services.  Petitioner's responsibilities at that store included buying and selling clothes and assisting in the maintenance of its books, and the responsibilities of Ihsan Dura, who was a tailor, included buying and selling, and supervising the tailoring of, clothes.

In order to purchase inventory for Linea Pitti, during 1986, a third party made a $108,312 payment to a clothing manufacturer on behalf of C & I.  In January 1987, $53,000 was deposited into the C & I bank account, and C & I's financial workpapers recorded that deposit in the officers' loan account.  By March 31, 1987, the officers' loan account in C & I's financial workpapers reflected funds advanced by C & I's officers in the total amount of $128,193.71.  As of March 31, 1987, the officers' loan account shown in C & I's financial workpapers included a security deposit in the amount of $25,365.21 that had been advanced by petitioner on behalf of that corporation.  The corporate income tax return (Form 1120) filed by C & I for its taxable year ended September 30, 1987, showed that, as of that date, C & I's account designated "Loans from stockholders" had a balance of $122,246.

During 1986, petitioner spent at least the following amounts on the items indicated:

| Expenditure | Amount |
|---|---|
| Home mortgage | $19,800 |
| State and local taxes | 2,371 |
| Car payments | 2,340 |
| Credit card payments | 2,400 |
| Total | 26,911 |

Petitioner's total cash expenditures during 1986 equaled at least $126,911.

Petitioner filed his 1986 return on or after December 1, 1988. In that return, petitioner reported that he received the following items of gross income from the payors indicated:

| Payors | Amount |
|---|---|
| Mingles, Inc. | $3,651.50 |
| Eduardo, Inc. | 298.07 |
| Eduardo, Inc. | 1,400.00 |
| Britex, Inc. T/A Linea Pitti | 457.14 |
| C & I, Inc. T/A Linea Pitti | 3,542.86 |
| State and local income tax refund | 258.00 |
| Total | 9,607.57 |

During 1986, petitioner received $26,000 in gross income from operating a car wash business that his father and he owned and that was known as Custom Car Salon. Petitioner did not report any portion of that $26,000 in the return that he filed for 1986.

Petitioner did not maintain any books or records for 1986 relating to his income-producing activities. In examining petitioner's taxable year 1986, respondent reconstructed petitioner's income pursuant to the cash expenditures method and determined in the notice of deficiency (notice) that petitioner had unreported income of $122,461 for that year.

On May 25, 1989, a Federal grand jury indicted petitioner on, inter alia, over 50 counts of violating 18 U.S.C. sections 1956(a)(1)(B)(i) and 1957 (1994) involving the laundering of proceeds of specified unlawful activity and criminally derived

proceeds (money-laundering).  The indictment alleged, inter alia,
(1) that beginning on or about January 1, 1985, and continuing
through April 15, 1989, Rayful Edmond III and Tony Lewis operated
a large scale unlawful narcotic drug trafficking organization and
(2) that shortly after C & I began operating Linea Pitti, peti-
tioner (a) maintained customer accounts at Linea Pitti for the
benefit of Rayful Edmond III and Tony Lewis on which purchases of
merchandise and payments thereon were recorded; (b) assisted them
in laundering the proceeds from their unlawful narcotic drug
organization in the purchase, on account and with cash, of in
excess of $400,000 worth of merchandise from Linea Pitti; and (c)
assisted them in further laundering their narcotic drug organiza-
tion's unlawful proceeds in the purchase of luxury automobiles
with those proceeds and in registering the automobiles in peti-
tioner's name as nominee.

On October 15, 1991, petitioner was convicted of 34 of the
counts set forth in the indictment, including about half of the
counts involving money-laundering.  On appeal, the U.S. Court of
Appeals for the District of Columbia Circuit affirmed as to 32 of
those counts, but reversed as to two counts of illegal struc-
turing of financial transactions under 31 U.S.C. section 5324
(1994).

## OPINION

Petitioner has the burden of showing that respondent's
determinations in the notice for 1986 that remain at issue are

erroneous.[6]  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Unreported Income

Section 6001 requires taxpayers to maintain sufficient records to determine their correct tax liabilities.  Petitioner does not dispute that he did not maintain any books or records for 1986 relating to his income-producing activities.  If a taxpayer fails to keep the required books and records, or if the books and records maintained do not clearly reflect income, respondent is authorized by section 446 to reconstruct income in accordance with a method that clearly reflects the full amount of income received, <u>Petzoldt v. Commissioner</u>, 92 T.C. 661 (1989),

---

[6]  Respondent raised for the first time in the answer, as an alternative position, that if the Court were to determine that petitioner is not liable for the additions to tax for fraud for the years at issue, petitioner would be liable for the additions to tax for negligence on the entire underpayment for each of those years, and not, as determined in the notice, only on the portion of the underpayment attributable to certain determinations in that notice that are discussed below.  Rule 142(a).  As indicated <u>supra</u> note 2, respondent conceded at trial the additions to tax for fraud for 1986 and the deficiency in, and additions to, tax for 1987.  Respondent generally would have the burden of proof on her alternative position in the answer with respect to the additions to tax for negligence for 1986.  In arguing the additions to tax for negligence on brief, respondent does not make clear to the Court whether or not she is advancing her alternative position that petitioner is liable for the additions to tax for 1986 on the entire underpayment for that year.  In this connection, however, respondent's counsel advised the Court in her opening statement before trial that, after respondent's concession of the additions to tax for fraud, no issues remain in this case on which respondent has the burden of proof.  Given the state of the record, we conclude that respondent has abandoned her alternative position in the answer with respect to the additions to tax for negligence for 1986.

provided that the reconstruction is reasonable in light of all the surrounding facts and circumstances, id.; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).

Respondent reconstructed petitioner's income for 1986 by using the cash expenditures method. That method is based on the assumption that the amount by which a taxpayer's expenditures during a taxable year exceeds his or her reported income for that year is taxable, absent some explanation by the taxpayer. Petzoldt v. Commissioner, supra at 694; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985); Burgo v. Commissioner, 69 T.C. 729, 742 (1978). To overcome that assumption, a taxpayer must show either that someone else made the expenditures or that the funds expended were obtained from nontaxable sources such as loans, gifts, inheritances, or assets on hand at the beginning of the taxable period in question. Petzoldt v. Commissioner, supra at 695; DeVenney v. Commissioner, supra at 931.

Petitioner does not dispute that during 1986 he spent at least $26,911 for personal living expenses and that he transferred $100,000 to C & I to purchase 50 percent of its stock.[7] However, petitioner claims that he obtained the funds that he transferred to C & I during 1986 from nontaxable sources, i.e.,

---

[7] Nor does petitioner dispute (1) that during 1986 over $100,000 was paid by a third party on behalf of C & I in order to purchase inventory for Linea Pitti, (2) that during January 1987 petitioner and Ihsan Dura transferred in excess of $50,000 to C & I, and (3) that, as of Mar. 31, 1987, they had transferred in excess of $70,000 in additional funds to that company, at least $25,365.21 of which was transferred by petitioner.

from third-party loans.  With one exception, petitioner did not introduce into the record any evidence supporting his claim that we found reliable and persuasive.[8]  For example, petitioner did not proffer any notes or other evidence of indebtedness relating to, any evidence of security for, or any books reflecting such loans.[9]  We are, however, persuaded by the record before us that petitioner's mother, Gloria M. Wynn, provided $23,800 of the total amount that petitioner transferred to C & I during 1986 and that, to that extent, the funds that petitioner spent during that year were obtained from a nontaxable source.[10]

Based on our examination of the entire record before us, we

---

[8]  To support his position that he obtained the funds that he transferred to C & I during 1986 as loans from third parties, petitioner relies on certain alleged sales receipts from Linea Pitti that purport to show that the store provided clothing at a discount to certain customers who, he alleges, were the individuals who lent him the money that he invested in C & I.  None of the alleged purchasers of the clothing to which those purported receipts pertain testified on petitioner's behalf, and we are unwilling to accept petitioner's uncorroborated testimony about them or those documents.  In this regard, it appears to the Court that the purported receipts in question are consistent with petitioner's illegal money-laundering activities of which he was convicted and that those activities, as well as the car wash business that petitioner and his father owned, are the likely sources of the funds that, during 1986, petitioner spent on personal living expenses and transferred to C & I.

[9]  Indeed, C & I's financial workpapers belie petitioner's contention that the funds in question were loans.  These workpapers indicate that the officers of C & I (viz., petitioner and Ihsan Dura) were the individuals who, during 1986 (and the first three months of 1987), transferred funds to C & I.

[10]  Respondent concedes as much on brief when she states:  "Only one of the documents * * * a check in the amount of $23,800 from Gloria Wynn, petitioner's mother, appears to support the infer- ence that petitioner received funds from a nontaxable source."

find that, except to the extent of $23,800, petitioner has not established that respondent's determination in the notice of unreported income for 1986, as reduced by her concession on brief, is wrong.[11]

## Dependency Exemption

Although petitioner contends on brief that his son, Charles McClaine, lived with him during 1986 and that petitioner is therefore entitled to claim him as a dependent for that year, the record is devoid of evidence supporting that contention.

On the record before us, we find that petitioner has failed to establish that he is entitled for 1986 to an exemption for a dependent child under section 151(a) and (c).

## Additions to Tax--Section 6653(a)(1)(A) and (B)

Respondent determined in the notice that petitioner is liable for 1986 for the additions to tax under section 6653(a)(1)(A) and (B) with respect to the underpayment for that year that is attributable only to the following determinations: (1) Disallowance of a personal exemption in the amount of $1,080,

---

[11] Respondent determined in the notice pursuant to the cash expenditures method that petitioner had $122,461 of unreported income for 1986. On brief, respondent takes the position that petitioner's unreported income for 1986 calculated pursuant to that method is $117,208. We construe respondent's position on brief as a concession by respondent that the amount of unreported income for 1986 determined in the notice should be reduced by $5,253. In making the computation required under Rule 155, the parties shall, inter alia, use $117,208 as the starting point for computing the amounts of the deficiency in, and additions to, petitioner's income tax for 1986 that result from this Opinion and other concessions of the parties.

(2) increase in income in the amount of $1,282 because of a State and local income tax refund, and (3) partial disallowance in the amount of $858 of a mortgage interest deduction.  Respondent concedes on brief (1) that the income for 1986 resulting from the State and local income tax refund that petitioner received during that year should be $1,187, and not $1,282 as determined in the notice, and (2) that during 1986 petitioner paid mortgage inter- est of $19,800, and not $17,862 as determined in the notice.  In light of the foregoing concessions of respondent, the underpay- ment for 1986 on which the additions to tax under section 6653(a)(1)(A) and (B) may be imposed may be eliminated entirely.

In the event that that underpayment is not eliminated, section 6653(a)(1)(A) generally imposes an addition to tax equal to five percent of the entire underpayment if any part of it was due to negligence or disregard of rules or regulations.  Section 6653(a)(1)(B) imposes a further addition to tax in an amount equal to 50 percent of the interest payable with respect to the portion of the underpayment that is attributable to negligence or disregard of rules or regulations.[12]  For purposes of section 6653(a)(1), the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and the term "disregard" includes any careless, reckless, or inten-

---

[12]  For purposes of sec. 6653(a)(1)(A) and (B), the underpayment otherwise determined shall be reduced by any portion of such underpayment that is attributable to fraud with respect to which an addition to tax under sec. 6653(b) is imposed.

tional disregard.  Sec. 6653(a)(3).  Negligence also has been defined as a lack of due care or failure to do what a reasonable and prudent person ordinarily would do under similar circumstances.  See Crocker v. Commissioner, 92 T.C. 899, 916 (1989); Neely v. Commissioner, 85 T.C. 934, 947-948 (1985).

Failure by a taxpayer to keep adequate records may justify imposition of the additions to tax for negligence.  See Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir. 1978), affg. T.C. Memo. 1975-293; Crocker v. Commissioner, supra at 917.  Failure to maintain adequate records also indicates disregard of the rules or regulations that require a taxpayer to keep permanent records sufficient to establish, inter alia, the taxpayer's gross income and deductions.  See Crocker v. Commissioner, supra at 917.  Failure to file timely a return without reasonable cause also may be evidence that an underpayment of tax was attributable to negligence or disregard of rules or regulations.  See Emmons v. Commissioner, 92 T.C. 342, 350 (1989), affd. 898 F.2d 50 (5th Cir. 1990).

Petitioner concedes that he failed to keep adequate records for 1986 and that he failed to file timely his 1986 return without reasonable cause.  Petitioner also concedes that he failed to report $1,187 of income for 1986 that is attributable to a refund of State and local income taxes that he received during that year.

On the instant record, we find that petitioner has failed to show error in respondent's determination in the notice, as reduced by her concessions on brief, that for 1986 he is liable for the additions to tax under section 6653(a)(1)(A) and (B).

Addition to Tax--Section 6661(a)

Respondent determined in the notice that petitioner is liable for 1986 for the addition to tax under section 6661(a) only with respect to the $122,461 understatement of income for that year determined in the notice pursuant to the cash expenditures method. Respondent concedes on brief that petitioner's unreported income for 1986 calculated pursuant to that method is $117,208, and not $122,461 as determined in the notice. In light of the foregoing concession of respondent, and as stated infra, the understatement for 1986 with respect to which the addition to tax under section 6661(a) may be imposed shall be correspondingly reduced.

If there is a substantial understatement of income tax for a taxable year, section 6661(a) imposes an addition to tax equal to 25 percent of the underpayment attributable to that understatement. An understatement exists where the amount of tax shown in the taxpayer's return is less than the amount required to be shown in that return. Sec. 6661(b)(2)(A). In the case of individuals, an understatement is substantial if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown.

Sec. 6661(b)(1)(A). Except for items attributable to tax shelters, the amount of the understatement is reduced by items with respect to which the taxpayer has or had substantial authority for his or her position or for which relevant facts affecting the tax treatment were adequately disclosed in his or her return. Sec. 6661(b)(2)(B).

Petitioner has not attempted to show that there is substantial authority for the items contributing to the understatement at issue or that the facts establishing the tax treatment of those items were adequately disclosed. His only position is that he did not have an understatement for 1986 because he obtained the funds that he transferred to C & I during that year from third parties as loans, and, consequently, those funds are not income to him.

On the record before us, we have found that, except for $23,800, petitioner has failed to establish error in respondent's determination in the notice, as reduced by her concession on brief, that he has unreported income for 1986. On that record, we further find that, except for $29,053[13] of the understatement determined in the notice with respect to which respondent determined the addition to tax under section 6661(a), petitioner has

---

[13]  This amount is the total of (1) $23,800 that petitioner showed that he received from a nontaxable source during 1986 and (2) $5,253 that respondent concedes on brief should reduce the amount of unreported income for 1986 that she determined in the notice pursuant to the cash expenditures method.

failed to show error in respondent's determination in the notice that he is liable for 1986 for that addition to tax.

To reflect the foregoing and the concessions by the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.