T.C. Memo. 1997-511


UNITED STATES TAX COURT


KAREN ANN KEEGAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26696-96.          Filed November 13, 1997.


Karen Ann Keegan, pro se.

<u>Robert W. Dillard</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180,

181, and 182.[1]  Respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties under section 6662(a) as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1994 | $5,204.00 | $1,040.80 |
| 1995 | 4,909.37 | 981.87 |

After concessions,[2] the issues for decision are:  (1) Whether petitioner underreported gross income on her return for the taxable year 1994; (2) whether petitioner is entitled to cost of goods sold claimed on Schedules C of her returns for the taxable years 1994 and 1995; (3) whether petitioner is entitled to dependency exemptions for the taxable years 1994 and 1995; (4) whether petitioner is entitled to head-of-household filing status for the taxable years 1994 and 1995; and (5) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for the taxable years 1994 and 1995.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found.  The stipulation of facts and the attached exhibits are

---

[1]  All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Petitioner concedes that she is not entitled to car and truck expenses claimed on Schedule C of her 1994 tax return in the amount of $3,132.

incorporated herein by this reference.  At the time of filing the petition, petitioner resided at Clearwater, Florida.

1.  <u>Petitioner's Schedules C</u>

In 1988, petitioner began operating a sole proprietorship which offered drafting services under the name Keegan & Associates (K & A).  Petitioner managed K & A and performed any necessary bookkeeping.  Petitioner's cousin, Robert Gorges, and their daughter, Windi Keegan (Windi), worked for K & A during the taxable years in issue.[3]  Since petitioner had no drafting experience, Mr. Gorges performed any required drafting services. In addition, Mr. Gorges operated the business when petitioner was away.  Windi answered telephones and performed other administrative duties.

Although petitioner did not pay Windi or Mr. Gorges a fixed salary or weekly wage, they would from time to time take cash from K & A.  In addition, many of Mr. Gorges' and Windi's living expenses were paid out of K & A's funds.  Petitioner kept no records of the amount of cash which K & A paid for services rendered during the taxable years in issue.

On Schedules C of her returns for the taxable years 1994 and 1995, petitioner reported gross receipts, cost of goods sold, and expenses related to K & A as follows:

|  | 1994 | 1995 |
|---|---|---|

---

[3]  Petitioner and Mr. Gorges have never been married.

Income:

| | | |
|---|---|---|
| Gross receipts | $8,010 | $18,285 |
| Cost of goods sold: | | |
|   Cost of labor | 6,200 | 10,275 |
|   Materials and supplies | 1,383 | 2,065 |
|   Other costs | --- | 826 |
| Gross income | 427 | 5,119 |

Expenses:

| | | |
|---|---|---|
| Advertising | 480 | 566 |
| Car and truck | 3,132 | --- |
| Taxes and licences | --- | 70 |
| Utilities | --- | 175 |
| Total expenses | 3,612 | 811 |
| Net profit or (loss) | (3,185) | 4,308 |

2.  <u>Dependency Exemption and Filing Status for 1994 and 1995</u>

During the fall of 1994 and throughout 1995, petitioner was a full-time student at Eckerd College, located in St. Petersburg, Florida.  Petitioner lived in a dormitory located on Eckerd College's campus.  Petitioner's expenses for tuition, room, and board were paid through either scholarship proceeds or student loans.  When petitioner was not living at college, petitioner stayed at a house owned by her aunt, Helen Gorges.[4]  Mr. Gorges and Windi also lived in Ms. Gorges' house throughout the years 1994 and 1995.  Although there was an agreement that petitioner and/or Mr. Gorges would pay rent in the amount of $55 per week to Ms. Gorges, neither petitioner, Mr. Gorges, nor Windi paid rent to Ms. Gorges during the years in issue.

---

[4]  Helen Gorges is Mr. Gorges' mother.

Windi, in addition to working for K & A, also worked at an IGA grocery store from January 1995 to November 1995, earning between $120 and $130 per week. Windi used her earnings for personal expenses.

Petitioner received assistance from Federal and State agencies during the taxable years in issue. The assistance included food stamps for the entire taxable year 1994 and for 3 to 4 months during the taxable year 1995. Petitioner received monthly food stamp benefits in the amount of $212 ($2,544 per year). Petitioner, Mr. Gorges, and Windi were also covered under Medicaid during the taxable years in issue.

Petitioner claimed Mr. Gorges and Windi as dependents on her returns for the years 1994 and 1995, and claimed head-of-household filing status for each of those taxable years.

3. Respondent's Adjustments for the Taxable Years 1994 and 1995 and Reconstruction of Petitioner's Income for the Taxable Year 1994

Upon examination, respondent disallowed the cost of goods sold claimed by petitioner on Schedules C of her 1994 and 1995 returns. Respondent also disallowed the claimed dependency exemptions for each of the taxable years in issue and determined that petitioner was not entitled to claim head-of-household filing status.

In addition to these adjustments, respondent reconstructed petitioner's income for the taxable year 1994 by using the source

and application of funds method.  As a result, respondent

determined that petitioner failed to report gross income in the

amount of $4,578.  This amount was calculated as follows:

```
Income:
  Gross wages[1]                              $8,707
  Gross receipts (Schedule C)                  8,010
  1993 tax refund                                198
Total known sources of income                            $16,915

Expenses:[2]
  Federal taxes withheld                                    1,668
  Schedule C expenses (as verified)                           480
  Personal living expenses--
    Bureau of Labor Statistics[3]                          19,345
Total expenses                                           (21,493)

Unreported income                                          4,578
```

[1]  In addition to her Schedule C activities, petitioner worked for Office Depot during the taxable year 1994 and reported wages earned in the amount of $8,707.

[2] On Schedule C of her 1994 return, petitioner claimed cost of goods sold in the amount of $7,583.  Respondent disallowed petitioner's claimed cost of goods sold, and, accordingly, respondent's reconstruction of petitioner's income does not reflect cost of goods sold.

[3] Respondent utilized the average annual expenditures for 1994 for one person, U.S. Department of Labor, Bureau of Labor Statistics.  One component of these living expenses is the cost of shelter in the amount of $4,089.

OPINION

We begin by noting that petitioner bears the burden of

proving that respondent's determination is erroneous.  Rule

142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover,

deductions are a matter of legislative grace, and petitioner

bears the burden of proving that she is entitled to any

deductions claimed. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).

1. <u>Respondent's Reconstruction of Petitioner's Income</u>

Pursuant to a reconstruction of petitioner's income for the taxable year 1994, respondent determined that petitioner had failed to report gross income in the amount of $4,578.

Taxpayers are required to maintain adequate records of taxable income. Sec. 6001. Where a taxpayer fails to produce or maintain adequate records from which actual income may be ascertained, the Commissioner may reconstruct a taxpayer's income by any method that clearly reflects income. Sec. 446(b); <u>Goodmon v. Commissioner</u>, 761 F.2d 1522, 1524 (11th Cir. 1985); <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 687, 693 (1989). The method of reconstructing income need only be reasonable in light of all surrounding circumstances. <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 687.

The source and application of funds method has been regarded as a reasonable method of determining income. <u>United States v. Johnson</u>, 319 U.S. 503, 517-518 (1943); <u>Meier v. Commissioner</u>, 91 T.C. 273, 295-296 (1988). As explained by this Court in <u>DeVenney v. Commissioner</u>, 85 T.C. 927, 930 (1985):

> The * * * [source and application of funds] method is based upon the assumption that the amount by which a taxpayer's cash expenditures during a taxable period exceed * * * [the taxpayer's] known sources of income for that period is taxable income, unless the taxpayer

can show his expenditures were made from some nontaxable source of funds. * * *

A deficiency based upon the source and application of funds method is presumptively correct, and the burden of proof is on the taxpayer to prove otherwise. Rule 142(a). A taxpayer may meet this burden by proving that assets were on hand at the beginning of the taxable period with which to make the expenditures, that amounts received during the year were nontaxable, or that someone else made the expenditures. Id. at 930-931.

In this instance, respondent used the average living expenses of one person, as provided by the Bureau of Labor Statistics (BLS), as a basis for determining that petitioner's income for the taxable year 1994 included the cost of supporting herself. See Denson v. Commissioner, T.C. Memo. 1982-360 (discussing the Commissioner's reliance on BLS tables). We have previously approved the Commissioner's use of BLS data when reconstructing a taxpayer's income. See Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). Nevertheless, if evidence exists which indicates that a taxpayer's living expenses for the taxable year in question were less than the average living expenses provided in the BLS tables, we may modify the Commissioner's reconstruction under the source and application of funds method to account for that difference. Denson v. Commissioner, supra.

Petitioner admitted at trial that she refused to provide respondent with any of K & A's bank statements for each of the taxable years in issue. Petitioner also refused to provide respondent with any billing statements issued by K & A to its customers during the taxable year 1994. This documentation could have permitted respondent to ascertain the correctness of the reported income. Given the absence of any documentation in the record, we find that respondent was reasonable in reconstructing petitioner's income under the source and application of funds method.

Despite our conclusion that respondent was reasonable in the determination to reconstruct petitioner's income, the record indicates that petitioner's living expenses were less than the average living expenses provided in the BLS tables. The average living expenses provided in the BLS tables includes costs for shelter in the amount of $4,089.[5] During the taxable year 1994, however, petitioner did not incur any rent or mortgage expense. Accordingly, we reduce petitioner's living expenses, as reflected in respondent's reconstruction, by the amount of $4,089. Consequently, we conclude that petitioner failed to report income

---

[5] Respondent did not include any funds expended for dormitory lodging. Since the record reflects that such lodging was paid out of loans or scholarship funds, such payments would be properly excluded from a source and application of funds analysis.

during the taxable year 1994 in the amount of $489 ($4,578 less $4,089).

2. Cost of Goods Sold

Respondent disallowed the cost of goods sold which petitioner claimed on Schedules C of her returns for the taxable years 1994[6] and 1995.

In disallowing the cost of goods sold claimed by petitioner for 1995, respondent did not contest petitioner's characterization of the items in question as costs of goods sold rather than as claims for deductible expenses under section 162. The cost of goods sold is subtracted from gross receipts for purposes of determining gross income, whereas business expenses are deducted from gross income. Hahn v. Commissioner, 30 T.C. 195, 197 (1958), affd. per curiam 271 F.2d 739 (5th Cir. 1959). In effect, cost of goods sold, unlike business expenses, is excluded from gross income. Section 1.61-3(a), Income Tax Regs., provides that "In a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the cost of goods sold".

---

[6] We do not consider respondent's adjustment to cost of goods sold for 1994. Any allowance by the Court would result in an increase in petitioner's expenditures, which would have the effect of increasing income under the source and application of funds analysis. Since we have fully addressed respondent's reconstruction of petitioner's income for 1994, we see no reason to address separately respondent's adjustment with respect to costs of goods sold for 1994.

Petitioner's business provided drafting services, and nothing in the record indicates that K & A was engaged in manufacturing or merchandising. Therefore, we consider the cost of goods sold in question to be claims for business expense deductions under section 162.

Section 162(a) provides that there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 6001 requires that a taxpayer liable for any tax shall maintain such records, render such statements, make such returns, and comply with such regulations as the Secretary may from time to time prescribe. To be entitled to a deduction under section 162(a), therefore, a taxpayer is required to substantiate the deduction through the maintenance of books and records.

In the event that a taxpayer establishes that he or she has incurred a deductible expense, but is unable to substantiate the precise amount of the expense, we may estimate the amount of the deductible expense. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot estimate deductible expenses, however, unless the taxpayer presents evidence sufficient to provide some rational basis upon which estimates may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Petitioner's claimed expenses for the taxable year 1995 relate to the cost of labor, the cost of materials and supplies, and "other costs". We first address petitioner's claims for expenses relating to labor costs. Although petitioner kept no documentation concerning amounts paid by K & A for services rendered and testified that the amounts reflected on the returns were estimates, we are convinced that Mr. Gorges and Windi performed services for K & A and were compensated. Particularly, petitioner's lack of drafting experience serves as strong indication that she relied upon Mr. Gorges to perform necessary drafting services. Moreover, given petitioner's status as a full-time student during the fall of 1994, we are convinced that petitioner relied upon Windi to perform various administrative duties while petitioner was not available. In return, K & A provided for a portion of Mr. Gorges' and Windi's living expenses. Employing the rule of Cohan v. Commissioner, supra, we conclude that petitioner is entitled to a deduction for compensation paid to Mr. Gorges and Windi in the amount of $5,000 for 1995.

We now address petitioner's claims for expenses relating to materials and supplies and "other costs" with respect to the taxable year 1995. Petitioner testified that, in similar fashion to the claimed labor expenses, the amounts reflected on her return as expenses for materials and supplies and for "other

costs" were estimated. Petitioner failed to provide any detailed testimony concerning these claimed expenses and offered no written substantiation. We, therefore, have no basis to make an estimate. Petitioner has failed to meet her burden of proving entitlement to these claimed expenses. Rule 142(a). Accordingly, we sustain respondent's determination to that extent.

3. <u>Dependency Exemption and Filing Status for 1994 and 1995</u>

(a) <u>Dependency</u>

Section 151(c) allows an exemption amount for each dependent: (1) Whose gross income for the taxable year is less than the exemption amount, or (2) who is a child of the taxpayer and is a student who has not attained the age of 24 at the close of such calendar year. Sec. 151(c)(1)(A) and (B)(ii). Dependents are generally defined as individuals who receive over half of their support from a taxpayer in the calendar year in which that taxpayer's taxable year begins. Sec. 152(a).

For purposes of determining whether or not an individual received over one-half of his or her support from the taxpayer during a given calendar year, there shall be taken into account the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources. Sec. 1.152-1(a)(2)(i), Income Tax Regs. Support includes amounts which an individual has contributed to his or

her own support. Sec. 1.152-1(a)(2)(ii), Income Tax Regs. To determine whether a taxpayer has furnished over half of an individual's support, there must be included the cost of food, shelter, clothing, medical and dental care, education, and the like. Sec. 1.152-1(a)(2)(i), Income Tax Regs. Although the amount of an item of support is usually its cost, where lodging is furnished to an individual, the amount of support is the fair market value of such lodging. Id. Welfare payments or similar public assistance received directly by a claimed dependent, or received by the taxpayer for the benefit of a claimed dependent, are not considered support furnished by the taxpayer. Gulvin v. Commissioner, 644 F.2d 2 (5th Cir. 1981), affg. T.C. Memo. 1980-111; Williams v. Commissioner, T.C. Memo. 1996-126, affd. without published opinion 119 F.3d 10 (11th Cir. 1997).

In cases where two or more persons contribute to the support of an individual, section 152(c) provides that a taxpayer is treated as contributing over one-half of the support of an individual for the calendar year if: (1) No one person contributed over half of the individual's support; (2) over half of such support was received from persons each of whom, but for the fact that he or she did not contribute over half of such support, would have been entitled to claim such individual as a dependent for the taxable year beginning in such calendar year; (3) the taxpayer contributed over 10 percent of such support; and

(4) each person described in (2) (other than the taxpayer) who contributed over 10 percent of such support files a written declaration that he or she will not claim such individual as a dependent for any taxable year beginning in such calendar year.

Respondent argues that petitioner is not entitled to the claimed dependency exemptions because she did not provide over one-half of the support for Windi and Mr. Gorges during the taxable years in issue. Petitioner bears the burden of proof on this issue. Rule 142(a); Seraydar v. Commissioner, 50 T.C. 756, 760 (1968).

Petitioner offered little evidence concerning the amount of support she provided to Mr. Gorges or Windi. Furthermore, Mr. Gorges and Windi resided rent-free in a home owned by Ms. Gorges, and they received Government benefits during each of the years in issue. In this regard, Ms. Gorges did not file a written declaration that she would not claim either Mr. Gorges or Windi as dependents on her return. Sec. 152(c). Moreover, Mr. Gorges and Windi worked, received income, and provided for their own personal living expenses during each of the years in issue. Accordingly, petitioner has failed to establish that she is entitled to the claimed exemptions for either Mr. Gorges or Windi during each of the taxable years in issue. Therefore, respondent is sustained on this issue.

(b) Filing Status

Petitioner claimed head-of-household filing status on her returns for the taxable years 1994 and 1995.  Under section 2(b)(1), a taxpayer who is unmarried may file a return as "head of household" if that taxpayer maintains as his or her home a household which constitutes for more than one-half of such taxable year the principal place of abode of certain described individuals.

In this case, petitioner has failed to establish that she maintained a household within the meaning of section 2(b). Petitioner neither owned nor paid rent for the house where Windi or Mr. Gorges resided during the taxable years in question. Moreover, Mr. Gorges is not a person who comes within the provisions of section 2(b)(1) and section 151.  Accordingly, we sustain respondent on this issue.

4.  <u>Accuracy-Related Penalty Under Section 6662(a)</u>

Respondent determined that petitioner was liable for the accuracy-related penalty under section 6662(a) for the taxable years 1994 and 1995.  The accuracy-related penalty is equal to 20 percent of any portion of an underpayment attributable to a taxpayer's negligence or disregard of rules or regulations.  Sec. 6662(a) and (b)(1).  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  The

penalty does not apply to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith.  Sec. 6664(c).  Generally, taxpayers bear the burden of proving that they are not liable for the accuracy-related penalty imposed by section 6662(a).  Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989).

Petitioner has failed to offer any evidence to suggest that she acted with reasonable cause and good faith with respect to the issues discussed herein.  Petitioner has failed in her burden of proving that she is not liable for the accuracy-related penalty.  We, therefore, sustain respondent's determination that petitioner is liable for the accuracy-related penalty under section 6662(a) for the taxable years 1994 and 1995.

To reflect the foregoing,

Decision will be entered
under Rule 155.